STEVE BULLOCK
Montana Attorney General
MICHAEL G. BLACK
ANDREW I. HUFF
Assistant Attorneys General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401

COUNSEL FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| Doug Lair; Steve Dogiakos; American Tradition Partnership; American Tradition Partnership PAC; Montana Right to Life Association PAC; Sweet Grass Council for Community Integrity; Lake County Republican Central Committee; Beaverhead County Republican Central Committee; Jake Oil LLC; JL Oil LLC; Champion Painting Inc.; and John Milanovich, | ) ) ) ) ) ) ) ) ) ) ) ) | Cause No. l:ll-cv-00102-RFC **DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** **HEARING REQUESTED** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| David B. Gallik, in his official capacity as Commissioner of Political Practices; Steve Bullock, in his official capacity as Attorney General of the State of Montana; and Leo Gallagher, in his official capacity as Lewis and Clark County Attorney, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................4

INTRODUCTION ...........................................................................9

ARGUMENT .................................................................................11

I.     BACKGROUND ...................................................................11

II.    PRELIMINARY INJUNCTION STANDARDS ....................................13

III.   PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THE MERITS...........................................................................16

    A.    Montana's Campaign Contribution Limits Are Constitutional. ..............................................16

    B.    Montana's Ban on Direct Corporate Contributions Is Constitutional. ..............................................20

         1.    Direct Corporate Contributions to Candidates. ..................20

         2.    Indirect Corporate Contributions Through Contributions to Political Committees................23

    C.    Plaintiffs Are Not Entitled to Preliminarily Enjoin Montana's Disclaimer Requirement. ...........................26

         1.    Plaintiffs Have Not Established Standing. .........................27

         2.    Plaintiffs Have Not Established That the Statute Is Unconstitutional................................29

    D.    Plaintiffs Have Not Shown They Will Likely Prevail in Their Challenge to Montana's Political Libel Statute. .................36

## **TABLE OF CONTENTS (Cont.)**

IV.   THE REMAINING PRONGS OF THE PRELIMINARY
     INJUNCTION TEST WEIGH AGAINST PLAINTIFFS. ......................38

    A.   Irreparable Harm ..................................................................39

    B.   Balance of Hardships ...........................................................40

    C.   Public Interest......................................................................41

CONCLUSION.....................................................................................41

CERTIFICATE OF MAILING .............................................................42

CERTIFICATE OF COMPLIANCE.......................................................42

# <u>TABLE OF AUTHORITIES</u>

ACLU v. Heller,
    378 F.3d 979 (9th Cir. 2004) ........................................................................29

Able v. United States,
    44 F.3d 128 (2d Cir. 1995) ...........................................................................9

Agostini v. Felton,
    521 U.S. 203 (1997) ....................................................................................16

American Rivers v. National Marine Fisheries Serv.,
    126 F.3d 1118 (9th Cir. 1997) ....................................................................11

Arizonans for Official English v. Arizona,
    520 U.S. 43 (1997) ......................................................................................11

Beauharnais v. Illinois,
    343 U.S. 250 (1952) ....................................................................................32

Buckley v. Valeo,
    424 U.S. 1 (1976), and in the "long line of cases" since.................12, 13, 26

Canyon Ferry Baptist Church of East Helena v. Unsworth,
    556 F.3d 1021 (9th Cir. 2009) ....................................................................27

Citizens United v. Federal Election Commission,
    ___U.S. ___,130 S. Ct. 876 (2010) .......................................................passim

Doran v. Salem Inn, Inc.,
    422 U.S. 922 (1975) ....................................................................................9

Dymo Industries v. Tapewriter,
    326 F.2d 141 (9th Cir. 1964) ......................................................................9

## <u>TABLE OF AUTHORITIES (Cont.)</u>

Federal Election Commission v. Beaumont,
   539 U.S. 146 (2003) ........................................................5, 13, 15, 16

Federal Election Commission v. Colorado Republican Federal
   Campaign Committee,
   533 U.S. 431 (2001) ...............................................................5, 14, 18

Federal Election Commission v. Wisconsin Right to Life,
   551 U.S. 449 (2007) .........................................................................5

Garrison v. Louisiana,
   379 U.S. 64 (1964) ........................................................................32

Grayned v. City of Rockford,
   408 U.S. 104 (1972) .......................................................................25

Green Party of Connecticut v. Garfield,
   616 F.3d 189 (2nd Cir. 2010) .......................................................17

Human Life of Washington v. Brumsickle,
   624 F.3d 990 (9th Cir. 2010) ...............................22, 26, 27, 28

Hunt v. City of Los Angeles,
   638 F.3d 703 (9th Cir. 2011) .......................................................25

International Molders' and Allied Workers' Local Union
   Number 164 v. Nelson,
   799 F.2d 547 (9th Cir. 1986) .........................................................9

Iowa Right to Life Committee, Inc. v. Smithson,
   750 F. Supp. 2d 1020 (S.D. Iowa 2010) .....................................17

## TABLE OF AUTHORITIES (Cont.)

Iowa Right to Life v. Tooker,
   2011 U.S. Dist. LEXIS 73319 (S.D. Iowa 2011) .........................................17

Lopez v. Candaele,
   630 F.3d 775 (9th Cir. 2010) ....................................................23 24, 29, 33

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992) .............................................................................11, 23

Mazurek v. Armstrong,
   520 U.S. 968, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) ............................8

McConnell v. Federal Election Commission ,
   540 U.S. 93 (2003) ...................................................................5, 18, 26

McIntyre v. Ohio Elections Commission,
   514 U.S. 334 (1995) ...................................................................29

Minnesota Citizens Concerned for Life v. Swanson,
   640 F.3d 304 (8th Cir. 2011) .........................................................17

Montana Right to Life Associate v. Eddleman,
   343 F.3d 1085 (9th Cir. 2003) .......................................................4, 6, 12, 13

Montana Shrugged Tea Party Patriots v. Unsworth,
   Cause No. CV-10-135-BLG-RFC-CSO (Docket No.10)............................21

New York Times v. Sullivan,
   376 U.S. 254 (1964) ...................................................................32

Nixon v. Shrink Mo. Government PAC,
   528 U.S. 377 (2000) ...................................................................13

## <u>TABLE OF AUTHORITIES (Cont.)</u>

Planned Parenthood of Southeastern Pa. v. Casey,
  505 U.S. 833 (1992) ...................................................................................10

Pratt v. Rowland,
  65 F.3d 802 (9th Cir. 1995) ...........................................................................9

Randall v. Sorrell,
  548 U.S. 230 (2006) ...................................................................................14

SpeechNow.org v. Federal Election Commission,
  599 F.3d 686 (D.C. Cir. 2010).....................................................................27

Thalheimer v. City of San Diego,
  645 F.3d 1109 (9th Cir. 2011) ...............................................................passim

U.S. v. Danielczyk,
  2011 U.S. Dist. LEXIS 60918 (E.D. Va. 2011) ..........................................17

United States v. Alvarez,
  617 F.3d 1198 (9th Cir. 2010), cert. granted 2011U.S. LEXIS
  7481 (October 17, 2011)................................................................................32

United States v. Stevens,
  ___ U.S. ___, 130 S. Ct. 1577 (2010) ..........................................................32

United States v. Williams,
  553 U.S. 285 (2008) .............................................................................29, 30

Warsoldier v. Woodford,
  418 F.3d 989 (9th Cir. 2005) .........................................................................9

**TABLE OF AUTHORITIES (Cont.)**

Washington State Grange v. Washington State Republican Party,
    552 U.S. 442 (2008) ......................................................................30

Western Tradition Partnership v. Attorney General,
    No. BDV-2010-238 (Mont. 1st Dist. Oct. 18, 2010)....................20

Winter v. NRDC,
    555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ..................8

## OTHER AUTHORITIES

Montana Code Annotated
    §§ 5-3-101, et seq .........................................................................26
    § 13-1-101(22) .............................................................................19
    § 13-37-216...........................................................................11, 12
    § 13-37-131(1) .............................................................................31

Montana Administrative Rules
    Rule 44.10.323(4)(i) .....................................................................18

Montana Constitution
    Art. V, § 6 .....................................................................................26

## INTRODUCTION

By their Verified Complaint, Plaintiffs launch a far-reaching attack on Montana's campaign finance laws.  Essentially, Plaintiffs seek license to inject unlimited amounts of money into Montana's state and local elections.  They also want to be free to use that money to engage in attack ads with no accountability for truth.  Defendants join Plaintiffs in requesting a hearing on the Motion.

As a matter of public policy, it is safe to say that what we do not need in our political process is more money and less truth.  More importantly and germane, the Constitution does not require this Court to issue a preliminary injunction that would result in free-for-all spending and baseless political attacks.

Plaintiffs overreach in the arguments presented in support of their Motion for Preliminary Injunction.  They overstate the breadth of holdings in various cases upon which they rely, especially the Supreme Court decision in Citizens United v. Federal Election Comm'n, ___U.S. ___, 130 S. Ct. 876 (2010).

Plaintiffs fail to address a prior case originating in this Court that established Montana's campaign contribution limits were constitutional.  Montana Right to Life Assoc. v. Eddleman, 343 F.3d 1085 (9th Cir. 2003).  That decision remains binding based upon principles of *stare decisis.*

Plaintiffs ask this Court to disregard binding precedent in attempting to convince this Court to issue a preliminary injunction on Montana's corporate

contribution ban to candidates.  <u>Federal Election Comm'n v. Beaumont</u>, 549 U.S. 146 (2003).  They further ask this Court to disregard precedent establishing Montana's interest in preventing circumvention of valid contribution limits, with respect to the ban on corporate contribution to political committees.  <u>Federal Election Comm'n v. Colorado Republican Fed. Campaign Comm.</u>, 533 U.S. 431, 457 n.19 (2001).

Although they have not shown that they face any credible threat of prosecution, injury, or harm, they seek a preliminary injunction against enforcement of two statutes (§§ 13-35-225(3)(a) and 13-37-131) that simply assure some degree of truthfulness in political attack ads.  In doing so, they urge the Court to adopt novel  interpretations of various cases interpreting federal campaign laws (including <u>McConnell v. Federal Election Comm'n</u> , 540 U.S. 93 (2003) and <u>Federal Election Comm'n v. Wisconsin Right to Life</u>, 551 U.S 449 (2007)) in requesting a preliminary injunction against enforcement of the same two statutes.

Plaintiffs have failed to meet their burden to establish a right to a preliminary injunction.  With the current campaign season in full swing, a preliminary injunction would severely and unnecessarily disrupt and interfere with Montana's strong interest in regulating its state and local elections.

# ARGUMENT

## I.      BACKGROUND

Montana has adopted a number of campaign finance and election laws in

Title 13, chapters 35 and 37 of the Montana Code Annotated.  These laws include

contribution limits that this Court has previously ruled are constitutional, and

which the Ninth Circuit affirmed on appeal.  <u>Montana Right to Life Assoc. v.

Eddleman</u>, 343 F.3d 1085 (9th Cir. 2003).  On October 24, 2011, the contribution

limits were increased as a result of inflation adjustments mandated by Mont. Code

Ann. § 13-37-216(4).  <u>See</u> Foundational Declaration of Mary Baker, and Exhibits

A and B thereto.  Thus, Montana's contribution limits have increased since the

Verifed Complaint and Motion for Preliminary Injunction were filed.

Montana has banned direct contributions from corporations to candidates

and political committees pursuant to Mont. Code Ann. §13-35-227(2).  Montana's

ban on independent corporate expenditures in Mont. Code Ann. § 13-35-227(1),

has been declared unconstitutional by a Montana District Court, and is currently on

appeal before the Montana Supreme Court.  <u>See</u> <u>Western Tradition Partnership v.

Attorney General</u>, Cause No. DA 11-0081 (appeal of Cause No. BDV-2010-238,

Montana First Judicial District).  Enforcement of the statute has been permanently

enjoined unless the injunction is vacated by the Montana Supreme Court on appeal,

as recently recognized by this Court in <u>Montana Shrugged Tea Party Patriots v.

<u>Unsworth</u>,   <u>See</u> Order Granting Motion to Dismiss, Cause No. CV-10-135-BLG-RFC-CSO (Docket No. 37), at 10 (May 11, 2011).  Thus, there is no present restriction on corporations making independent expenditures.

Montana does prohibit political committees from accepting contributions from corporations.  Political committees are allowed to make contributions directly to candidates subject to the limits set forth Mont. Code Ann. § 13-35-216. Allowing corporations to make contributions to political committees for the ostensible purpose of funding any committee's independent expenditures would merely create a mechanism to circumvent the ban on corporate contributions because there would be no restriction on the committee using funds from corporate contributions to make contributions to candidates.  Since there is no restriction on corporate independent expenditures, the prohibition on corporate contributions to political committees that can make separate independent expenditures (but can also use the corporate funds to contribute to candidates) does not impede any corporation's recognized right to engage in political speech.

The prohibition on corporate contributions to political committees furthers Montana's legitimate interest in preventing circumvention of contribution limits, which validly protect against corruption and the appearance of corruption in political campaigns.  Montana has a history of corruptive corporate influence in politics.  <u>See</u> Declaration of Dr. Harry Fritz.  If more corporate money were

allowed into the Montana political process through political committees or direct contributions to candidates, there would be huge negative changes in the Montana political process and relationships between candidates and voters.  <u>See</u> Declaration of Mike Cooney.  These changes would alter Montana politics for the worse and would not be consistent with our political history and heritage.  <u>See</u> Declaration of Bob Brown.

## II.    PRELIMINARY INJUNCTION STANDARDS

A preliminary injunction is an extraordinary and drastic remedy and "one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (per curiam).  Four elements must be established by the party seeking injunctive relief.  In order to obtain a preliminary injunction, Plaintiffs must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable injury if the injunction does not issue; (3) the balance of hardships tips in their favor; and (4) granting an injunction will be in the public interest.  <u>Winter v. NRDC</u>, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008); <u>Thalheimer v. City of San Diego</u>, 645 F.3d 1109, 1115 (9th Cir. 2011).

The first factor the Court must consider in deciding whether to issue a preliminary injunction is the *likelihood* that Plaintiff will succeed on the merits.

Plaintiffs must meet rigorous standard, demonstrating that it is "likely to prevail on the merits." Doran v. Salem Inn, Inc., 422 U.S. 922, 931 (1975).   This standard "reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995).   A preliminary injunction will not be granted absent a *clear showing* of likely success in the underlying claim and a significant threat of irreparable injury. Warsoldier v. Woodford, 418 F.3d 989, 993-94 (9th Cir. 2005); Pratt v. Rowland, 65 F.3d 802, 805 (9th Cir. 1995). "In determining whether to issue a preliminary injunction, the Court is not 'bound to decide doubtful and difficult questions of law or disputed questions of fact.'"Internat'l Molders' and Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d 547, 551 (9th Cir. 1986*)* (quoting Dymo Industries v. Tapewriter, 326 F.2d 141, 143 (9th Cir. 1964).

In determining the likelihood of success on the merits, settled law must be followed by this Court.  The doctrine of *stare decisis* embodies the requirement to "adhere to decided cases."  Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 954 (1992) (Rehnquist J. concurring in part and dissenting in part) (quoting *Black's Law Dictionary* 1406 (6th ed. 1990).  The Ninth Circuit has recently noted "[a]s every first-year law student knows, the doctrine of *stare*

*decisis* is often the determining factor in deciding cases brought before any court.

The doctrine of *stare decisis* is 'the means by which we ensure that the law will not

merely change erratically, but will develop in a principled and intelligible

fashion.'"Oregon Natural Desert Ass'n v. United States Forest Serv., 550 F.3d 778,

785 (9th Cir. 2008) (quoting Vasquez v. Hillery, 474 U.S.254, 265 (1986)).  And,

in applying the doctrine, it is the holding of the higher court which binds, not the

rationale.  In re Osborne, 76 F.3d 306, 309 (9th Cir. 1996) (citing Allegheny

General Hospital v. NLRB, 608 F.2d 965, 969-70 (3d Cir. 1979).

     In the First Amendment context, the moving party bears the initial burden of

making a colorable claim that its First Amendment rights have been infringed, or

are threatened with infringement, at which point the burden shifts to the

government to justify the restriction.  Thalheimer v. City of San Diego, 645 F.3d

1109, 1116 (9th Cir. 2010).  In order to establish a colorable claim, Plaintiffs must

establish standing.  Standing is part of likelihood of success on the merits.

Article III of the Constitution limits federal jurisdiction to cases and controversies,

and the "core component of standing is an essential and unchanging part of the

case-or-controversy requirement."  Lujan v. Defenders of Wildlife, 504 U.S. 555,

560 (1992).  The jurisdiction of the federal courts is limited to *actual* cases or

controversies.  American Rivers v. National Marine Fisheries Serv., 126 F.3d

1118, 1123 (9th Cir. 1997).  A federal court may not adjudicate a challenge to a

state statute absent a showing of actual impact on the challenger.  <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 48 (1997).

As discussed below, these standards applied to each challenge asserted by Plaintiffs demonstrates that Plaintiffs have not established entitlement to a preliminary injunction.  The Motion for Preliminary Injunction should be denied.

## III.   PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THE MERITS.

### A.   <u>Montana's Campaign Contribution Limits Are Constitutional</u>.

Plaintiffs challenge the campaign contribution limits applicable to individuals (Verified Complaint, Count I), PACs (Count II), and political parties (Count III).  These limits are set forth in Mont. Code Ann. § 13-37-216, and are adjusted periodically for inflation, most recently on October 24, 2011.  <u>See</u> Declaration of Mary Baker, and Exhibits A and B thereto; Mont. Code Ann. § 13-37-216(4).

Significantly, Montana's contribution limits were previously, unsuccessfully challenged in this Court by Plaintiffs' lead counsel (Mr. Bopp) on behalf of one of the Plaintiffs in this case in <u>Montana Right to Life Assoc. v. Eddleman</u>, 343 F.3d 1085 (9th Cir. 2003).  In that case, after a four-day trial, this Court held the limits on contributions by individuals and PACs were constitutional, and the Ninth

Circuit affirmed on appeal.  The Ninth Circuit noted that the contribution limits are adjusted for inflation.  Id. at 1089; see also Mont. Code Ann. § 13-37-216(4).

There has been no case from the United States Supreme Court, including Citizens United, or from the Ninth Circuit, that has altered the Montana Right To Life Court's analysis concerning limitations on contributions.  As the Ninth Circuit recently recognized in Thalheimer,  the Supreme Court in Citizens United drew a distinction between limitations on *expenditures* versus limitations on *contributions*.  In doing so, the Citizens United "Court made clear that it was not revisiting the long line of cases finding anti-corruption rationales sufficient to support [contribution] limitations."  Thalheimer, supra, 645 F.3d at 1124.

Thus, beginning with Buckley v. Valeo, 424 U.S. 1 (1976) ("Buckley"), and in the "long line of cases" since, the Supreme Court has distinguished laws restricting campaign expenditures from laws restricting campaign contributions.  Thalheimer, 645 F.3d at 1124.  The Court has determined that laws limiting campaign expenditures "impose significantly more severe restrictions on protected freedoms of political expression and association than do" laws limiting campaign contributions.  Id. at 23.  As a result, the Court has evaluated laws limiting campaign expenditures under the "strict scrutiny" standard, which "requires the Government to prove that the restriction furthers a compelling interest and is

narrowly tailored to achieve that interest." <u>Citizens United</u>, <u>supra</u>, 130 S. Ct. at 898.

For laws limiting campaign contributions, by contrast, the Court has conducted a "relatively complaisant review under the First Amendment." <u>Federal Election Comm'n v. Beaumont</u>, 539 U.S. 146, 161 (2003).  Such laws, the Court has concluded, are "merely 'marginal' speech restrictions," since contributions "lie closer to the edges than to the core of political expression."  <u>Id</u>. Thus, "instead of requiring contribution regulations to be narrowly tailored to serve a compelling governmental interest," a law limiting contributions "passes muster if it satisfies the lesser demand of being 'closely drawn' to match a 'sufficiently important interest.'"  <u>Id</u>. at 162.  (quoting <u>Nixon v. Shrink Mo. Gov't PAC</u>, 528 U.S. 377, 387-88 (2000) (some quotation marks omitted); <u>see</u> <u>also</u> <u>Buckley v. Valeo</u>, 424 U.S. at 25.

The Ninth Circuit applied the "closely drawn" standard in <u>Montana Right to Life</u>.  <u>See</u> 343 F.3d at 1092.  It is therefore clear that the Ninth Circuit's analysis and holding with respect to limits on campaign contributions remain good law. <u>Montana Right to Life</u> controls the disposition of Plaintiffs' challenge to Montana's contribution limits as they apply to individuals and PACs.

For purposes of determining the constitutionality of contribution limits, there is no constitutionally determinative distinction between contributions by political

parties and contributions by individuals or PACs.  See Federal Election Comm'n v. Colo. Republican Fed. Campaign Comm., 533 U.S. 431, 455-56 (2001) ("The Party's arguments for being treated differently from other political actors subject to limitation on political spending . . . do not pan out. . . . ").  In a subsequent plurality opinion, the Supreme Court suggested there may be circumstances under which political parties could be treated differently with respect to contribution limits. Randall v. Sorrell, 548 U.S. 230 (2006); see Thalheimer, supra, 645 F.3d at 1127. Significantly, however, the Vermont contribution limit at issue in Randall was very low ($200 to $400) and was the same for political parties as it was for individuals and PACs.

In contrast, section 13-37-216(3) provides substantially higher contribution limits for political parties than for individuals and PACs, and these limits are also adjusted for inflation.  Plaintiffs have not demonstrated that the contribution limits preclude candidates from running competitive campaigns or create serious associational or expressive problems as described in Randall.  In fact, Montana Right to Life established that it costs significantly less to campaign for political office in Montana than elsewhere, and Montana's contribution limits satisfy closely drawn scrutiny.  See also Declarations of Mike Cooney and Bob Brown (discussing the fact that political campaigns in Montana are inexpensive and cost less than in other states).

Plaintiffs have not established a colorable challenge to section 13-37-216's contribution limits.  They have therefore failed to demonstrate a likelihood that they will prevail on the merits.

**B.**    **Montana's Ban on Direct Corporate Contributions Is Constitutional.**

Plaintiffs also challenge Montana's ban on direct corporate contributions to candidates (Verified Complaint, Count IV), and to Political Committees (Count V). The corporate contribution ban is set forth in Mont. Code Ann. § 13-35-227. Plaintiffs also have failed to establish a right to preliminary injunctive relief on this issue.

**1.**    **Direct Corporate Contributions to Candidates.**

This Court can and should summarily reject Plaintiffs' request for an injunction against enforcement of Montana's ban on corporate contributions to candidates because the issue is resolved by binding precedent from the Supreme Court and Ninth Circuit.  Federal Election Comm'n v. Beaumont, 539 U.S. 146 (2003); Thalheimer, supra, 645 F.3d 1109.

In Beaumont, the Supreme Court upheld the constitutionality of a century-old North Carolina law that banned corporate contributions to candidates. The challenge in  Beaumant was brought by a non-profit advocacy corporation. The Court rejected the challenge, based on an "anti-circumvention interest"--that is, preventing the "misuse [of corporations] as conduits for circumventing the

contribution limits imposed on individuals."  Beaumont, 539 U.S. at 160.  The

Supreme Court specifically upheld the longstanding "ban on direct corporate

contributions."  Id. at 154.

In Thalheimer, the Ninth Circuit affirmed a district court's order denying a

preliminary injunction motion challenging the constitutionality of San Diego's ban

on corporate contributions to candidates.  In doing so, the Ninth Circuit held that

Beaumont was not overruled by Citizens United.  Thalheimer, 645 F.3d

at 1124-25.  As previously discussed, the Supreme Court in Citizens United

expressly declined to reconsider its jurisprudence on direct corporate contributions.

Citizens United, 130 S. Ct. at 909.  Beaumont remains controlling.

As noted above, principles of *stare decisis* provide that Beaumont applies

here.  Assuming for the sake of argument that the Supreme Court may, in a future

case, determine that Citizens United implicitly overruled portions of Beaumont,

this Court must still follow Beaumont until the Supreme Court in fact holds to the

contrary.  See Agostini v. Felton, 521 U.S. 203, 237 (1997) ("We do not

acknowledge, and we do not hold, that other courts should conclude our more

recent cases have, by implication, overruled an earlier precedent. We reaffirm that

if a precedent of this Court has direct application in a case, yet appears to rest on

reasons rejected in some other line of decisions, the Court of Appeals should

follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." )  (Internal quotation marks and alteration omitted.)

Plaintiffs have not cited any circuit case holding that a ban on direct corporate contributions to candidates is unconstitutional, and cite only one district court case in support of their argument.  One district court limited the holding in Beaumont to nonprofit corporations contributing to federal campaigns.  See United States v. Danielczyk, 2011 U.S. Dist. Lexis 60918 (E.D. Va. 2011), at *10-11.  The Danielczyk case has been sharply criticized as poorly reasoned and out of step with decisions of other courts, including the Ninth Circuit.  See Iowa Right to Life v. Tooker, 2011 U.S. Dist. LEXIS 73319 (S.D. Iowa 2011), at *46-48 n.37.  Post-Citizens United authorities from other jurisdictions, including the Ninth Circuit, substantiate the conclusion that bans on corporate contributions to candidates are constitutional.  Thalheimer, 645 F.3d at 1124-26; Minnesota Citizens Concerned for Life v. Swanson, 640 F.3d 304, 317-18 (8th Cir. 2011); Green Party of Connecticut v. Garfield, 616 F.3d 189, 199 (2d Cir. 2010); Iowa Right to Life Comm. v. Smithson, 750 F. Supp.2d 1020, 1045 n.20 (S.D. Iowa 2010).  The Ninth Circuit cited the Green Party and Minnesota Citizens cases for the propositions that Beaumont "remains good law" and a state can "generally ban all corporate contributions" because Citizens United did not extend its holding to

the "contribution context" and did not overrule <u>Beaumont</u>.  <u>Thalheimer v. City of San Diego</u>, 645 F.3d 1109, 1124, 1126 (9th Cir. 2011).

### 2.    Indirect Corporate Contributions Through Contributions to Political Committees

The prohibition of corporate contributions to political committees satisfies closely drawn scrutiny as well.  The restriction on corporate contributions to coordinated expenditures through political committees is constitutionally sound.  Montana's definition of a coordinated expenditure is substantially similar to those upheld by the Supreme Court.  <u>Compare</u> Mont. Admin. R. 44.10.323(4) ("an expenditure made in cooperation with, consultation with, at the request or suggestion of, or the prior consent of a candidate" <u>with</u> <u>McConnell v. Federal Election Comm'n</u>, 540 U.S. at 93, 219 (2003), <u>citing</u> 2 U.S.C. § 441a(a)(7)(B)(i) ("expenditures made by any person in cooperation, consultation, or concert, with, or at the request or suggestion of, a candidate").  There is therefore "no basis" for invalidating campaign finance laws that treat these coordinated expenditures (campaign spending made in coordination with a candidate), broadly defined, as contributions.  <u>McConnell</u>, 540 U.S. at 202; <u>see also</u> <u>id.</u> at 221 (coordinated expenditures, even in the absence of an agreement with a candidate, "would be virtually indistinguishable from a simple contribution") (citation and quotation omitted).  "Coordinated expenditures, unlike expenditures truly independent, may be restricted to minimize circumvention of contribution limits."  <u>Federal Election</u>

Comm'n v. Colorado Republican Fed. Campaign Comm'n, 533 U.S. 431, 465

(2001).

Plaintiffs will certainly argue that contributions to committees making

independent expenditures differ from coordinated expenditures.  The

circumvention problem remains, however, because Montana law does not limit

political committees to making only independent expenditures.  A political

committee may contribute directly to candidates, which a corporation cannot do.

There is no such thing as an "independent expenditure political committee"

under Montana law.  See, e.g., Mont. Code Ann. § 13-1-101(definitions); Mont.

Admin. R. 44.10.327 (types of political committees).  A "political committee" is

defined in Mont. Code Ann. § 13-1-101(22).  Political committees may and do

contribute to candidates, subject to the contribution limits set forth in Mont. Code

Ann. §13-35-216.  They may also make independent expenditures, so long as they

do not coordinate with the candidate or the candidate's committee.  Therefore,

allowing corporations to make direct contributions to political committees would

allow corporations to make indirect contributions to candidates because there

would be no restriction on the committee using funds from corporate contributions

to make contributions to candidates.

Because political committees in Montana are permitted to contribute to

candidates, section 13-35-227 is distinguishable from the San Diego ordinances at

issue in Thalheimer.  Under San Diego's ordinances, a political committee ("general purpose recipient committee") could not accept corporate contributions, and could make independent expenditures to support or oppose candidates (section 27.2936).  In these respects, section 27.2936 was the same as Montana's section 13-35-227.  Unlike Montana law, however, political committees under San Diego's ordinances could not contribute to candidates (section 27.2938).  Thus, there was no risk of circumventing the prohibition on direct corporate contributions to candidates (which the Court upheld).  The Court therefore analyzed the ban on corporate contributions to political committees under the Citizens United independent expenditures standard and found it constitutionally infirm. Thalheimer, 645 F.3d at 1117-1121.  Here, because political committees may make contributions to candidates, the anti-circumvention interests recognized in Thalheimer apply to Montana's ban on direct contributions to political committees.

The ban on independent expenditures by corporations cannot be enforced under the terms of the First Judicial District Court's grant of summary judgment in Western Tradition Partnership v. Attorney General, No. BDV-2010-238 (Mont. 1st Dist. Oct. 18, 2010).  That decision preceded this litigation, and its determination of the invalidity of the state law in question is binding on the Defendants to this case unless and until the Montana Supreme Court, whose potentially narrowing or invalidating construction of the statute would be controlling in a facial challenge,

decides the appeal of that case.  As this Court has already held in another case, these expenditure-related claims are moot.  <u>See</u> Order, <u>Montana Shrugged Tea Party Patriots v. Unsworth</u>, Cause No. CV-10-135-BLG-RFC-CSO (Docket No.10), at 2.

Corporations, including the corporate plaintiffs here, are free to engage in independent expenditures to support or oppose candidates.  There is no danger that the corporate independent expenditure voice will not be heard.

Despite the broad language in <u>Citizen United</u> emphasized by Plaintiffs here, the dangers of *quid pro quo* corruption recognized by the Supreme Court in <u>Buckley</u> and <u>Citizens United</u> remain a fundamental concern of state government. Plaintiffs have not established a colorable claim for relief under §§ 13-35-227, and fail to demonstrate a likelihood that they will prevail on the merits.

### C.   <u>Plaintiffs Are Not Entitled to Preliminarily Enjoin Montana's Disclaimer Requirement.</u>

Plaintiffs also challenge Mont. Code Ann, § 13-35-225(3)(a) (Verified Complaint, Count VI).  That statutory provision simply assures that representations about candidates' voting records be fair and balanced, by requiring that the particular vote or votes upon which representations are based be identified, and that any close-in-time, contrasting votes on the same issue also be disclosed.

Plaintiffs argue the statute is unconstitutionally void for vagueness, overbroad, and fails strict scrutiny review as a content-based regulation of speech.

As a threshold matter, Plaintiffs have not established standing to challenge preenforcement application of this statute.  Even if the Court were to reach the merits, Plaintiffs' arguments fail.  The disclaimer (and disclosure) requirements in the statute are constitutional and Plaintiffs cannot establish a realistic danger of direct injury.

The statute has a plainly legitimate scope, and there is a substantial relationship between the disclosure requirements and Montana's informational interest.  The statute gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited, does not delegate policy matters for resolution on an ad hoc and subjective basis, and does not operate to inhibit exercise of First Amendment freedoms.

### 1.    Plaintiffs Have Not Established Standing.

To satisfy Article III's case or controversy requirement, Plaintiffs must establish standing to challenge section 13-35-225(3)(a).  Human Life of Washington v. Brumsickle, 624 F.3d 990, 1000 (9th Cir. 2010).  The Court must not issue advisory opinions.  Id.  In order to prove standing, which is part of demonstrating the likelihood of prevailing on the merits, a plaintiff must demonstrate:  (1) an actual injury that is concrete and particularized and not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood, and not a mere speculative possibility,

that the plaintiff's injury will be redressed by a favorable decision.  Lujan, supra, 504 U.S. at 560-61; Lopez v. Candaele, 630 F.3d 775, 785 (9th Cir. 2010).

In First Amendment cases, a plaintiff can establish injury in fact by demonstrating that there is a realistic danger of direct injury.  Lopez, 205 F.3d at 785.  A realistic danger of direct injury is shown by the plaintiff's intention to engage in a course of conduct that is arguably affected by a constitutional interest, but which is proscribed by a statute under which there is a credible threat of prosecution.  Id.  Even under this standard, "The touchstone for determining injury in fact is whether the plaintiff has suffered an injury or threat of injury that is credible, not imaginary or speculative."  Id. at 786.

Courts look at a number of factors to determine whether plaintiffs who bring suit prior to violating a statute, so-called "preenforcement plaintiffs," have failed to show that they face a credible threat of adverse state action sufficient to establish standing.  Ninth Circuit courts have conducted three related inquiries. First, courts consider whether preenforcement plaintiffs have failed to show a reasonable likelihood that the government will enforce the challenged law against them. Second, courts have considered whether the plaintiffs have failed to establish, with some degree of concrete detail, that they intend to violate the challenged law. Courts have also considered a third factor, whether the challenged law is inapplicable to the plaintiffs, either by its terms or as interpreted by the

government.  Such inapplicability weighs against both the plaintiffs' claims that they intend to violate the law, and also their claims that the government intends to enforce the law against them.  Lopez, 205 F.3d at 786-87.

Plaintiffs argue that they will engage in issue-oriented advocacy that may fall within the terms of the statute.  See, e.g., Plaintiffs' Preliminary Injunction Memorandum, at 56-58.  Despite this contention, the Plaintiffs fail to offer any specifics regarding any vote by any candidate on any particular piece of legislation that has ever been proposed.  Plaintiffs therefore fail to allege any actual injury that is concrete and particularized, that is not conjectural or hypothetical, and which would likely be redressed by a favorable decision.  Plaintiffs offer nothing but speculation, and fail to demonstrate how the statute inhibits their exercise of First Amendment freedoms.  Thus, the Court should refrain from issuing an advisory opinion on the constitutionality of section 13-35-225(3)(a).

### 2.    Plaintiffs Have Not Established That the Statute Is Unconstitutional.

Even if Plaintiffs could establish standing, their constitutional arguments fail.  Under section 13-35-225(3)(a), if the printed material includes information about a candidate's voting record, the communication must also include (i) a reference to the particular vote or votes upon which the information is based, (ii) disclosure of contrasting votes known to have been made by the candidate on the same issue if closely related in time, and (iii) a statement to the best of signer's

knowledge that the statements made about the other candidate's voting record are accurate and true.

This statute is not vague.  The statute allows the speaker, who is advocating for the success or defeat of a candidate, to determine whether or not to communicate information about another candidate's voting record.  The information provided by the speaker defines the issue.  Simply, if a person is going to publish campaign materials attacking a candidate's voting record, he has to give information to substantiate the basis for the attack, and information about votes on the same issue if those votes contrast with the vote being attacked.

A statute or ordinance may be void for vagueness because either it (1) fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited; (2) impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application; or (3) abut(s) upon sensitive areas of basic First Amendment freedoms, operating to inhibit the exercise of those freedoms.  Hunt v. City of Los Angeles, 638 F.3d 703, 712 (9th Cir. 2011) (citing Grayned v. City of Rockford, 408 U.S. 104, 104 (1972)).

A person of ordinary intelligence has a reasonable opportunity to know what is prohibited by section 13-35-225(a)(3).  The term "close" is commonly understood to mean "being near in space or time."  See, e.g., American Heritage

College Dictionary, Fourth Ed. (2002), at 271.  The Montana Legislature, absent a

special session (convened pursuant to Mont. Code Ann. §§ 5-3-101, et seq.)

convenes each odd-numbered year for not more than 90 legislative days.  Mont.

Const., Art. V, § 6.  Votes being near in space or time would commonly be

understood as being votes taken during the same Legislature.  Plaintiffs have not

demonstrated that any of the Defendants suggest a different reading of the statute,

or that "close" would extend beyond any particular Legislature.

     The disclosure aspect of the statute is also constitutional.  Disclosure

requirements merely regulate speech, but do not prohibit speech.  Both Buckley

and Citizens United upheld disclosure and disclaimer requirements.  Buckley,

424 U.S. at 64-68; Citizens United, 130 S. Ct. at 900-902.  Montana has a

recognized interest in protecting the integrity and reliability of the election process.

First Amendment challenges to disclosure requirements in the electoral context are

reviewed under an "exacting scrutiny" standard, requiring "a 'substantial relation'

between the disclosure requirement and a 'sufficiently important' governmental

interest."  Citizens United, 130 S. Ct. at 914, quoting Buckley, 424 U.S. at 64, and

McConnell v. Federal Election Comm'n, 540 U.S. 93, 201 (2003); see also Doe v.

Reed, 130 S. Ct. 2811, 2818 (2010); Human Life of Washington v. Brumsickle,

624 F.3d 990, 1005 (9th Cir. 2010).  The continuing vitality of disclosure and

disclaimer requirements has been upheld in cases subsequent to Citizens United.

See, e.g., Doe v. Reed, ___, U.S. ___, 130 S. Ct. 2811, 2819 (2010); Human Life of Washington v. Brumsickle, 624 F.3d 990, 1005 (9th Cir. 2010); SpeechNow.org v. Federal Election Comm'n, 599 F.3d 686, 696-97 (D.C. Cir. 2010); State of Vermont v. Green Mountain Future, 2011 Vt. Super. LEXIS 38, at *9-12.

Montana has a sufficiently important government interest regarding information about voting records in electoral politics to require accurate disclosure where representations are made about voting records.  There is no serious burden on speech as a result of requiring disclosure where the speaker chooses to advocate for or against a candidate based upon his or her voting record.  Montana's disclosure and disclaimer laws have been enforced within their "plainly legitimate sweep" to meet Montana's indisputably important state interests in "keeping its citizens well informed with respect to the groups financially supporting and opposing" political campaign speech.  Canyon Ferry Baptist Church of East Helena v. Unsworth, 556 F.3d 1021, 1032 (9th Cir. 2009).

Plaintiffs argue that disclosure and disclaimer requirements apply only to "unambiguously campaign-related" speech, by which they mean express advocacy. The Supreme Court in Citizens United disposed of this issue in no uncertain terms, distinguishing disclosure requirements from restrictions on independent expenditures.  "[W]e reject Citizens United's contention that the disclosure

requirements must be limited to speech that is the functional equivalent of express advocacy." 130 S. Ct. at 915; see also Brumsickle, 624 F.3d at 1016 (holding, "imposing disclosure obligations on communicators engaged in issue advocacy is not per se unconstitutional; instead, the constitutionality of the obligations is determined by whether they are substantially related to a sufficiently important governmental interest.") As the Supreme Court held, disclaimers are constitutional even for a broad set of campaign-related speech that simply refers to a candidate by name that do not contain "magic words" of express advocacy. See Citizens United, 130 S. Ct. at 915 (rejecting challenge to disclaimer requirements for speech referring to a candidate by name and making "pejorative references to her candidacy"). Disclosure allows for transparency that "enables the electorate to make informed decisions and give proper weight to different speakers and messages." Id. at 916. Montana's disclosure requirements are substantially related to important informational interests, and are therefore constitutional.

Moreover, the statute is not the functional equivalent of a prior restraint. In the situation where a speaker chooses to communicate in writing and includes information about a candidate's voting record, the informational interest of Montana allows for requiring disclosure of known information referring to the particular vote taken and identifying contrasting votes known to have been made by the candidate.

Plaintiffs' argument that disclosure violates their right to anonymous political speech ignores the Supreme Court's treatment of disclosure regarding the identity of political speakers, and the limitation of the holding in <u>McIntyre v. Ohio Elections Comm'n</u>, 514 U.S. 334 (1995);  <u>Citizens United</u>, 130 S. Ct. at 980 (Thomas, J., dissenting to Part IV of the opinion because the majority holding disregarded the right to anonymous speech based upon an informational interest). <u>McIntyre</u> provides the basis for Plaintiffs' arguments about anonymity and the purported unconstitutionality of disclosure based upon the Ninth Circuit opinion in <u>Heller</u>.  <u>See</u> <u>American Civil Liberties Union v. Heller</u>, 378 F.3d 979, 981 (9th Cir. 2004) (disclosure requirement facially unconstitutional based upon reasoning of <u>McIntyre</u>).  Disclosure requirements are constitutional in light of Montana's informational interest, as the majority held in <u>Citizens United</u>, 130 S. Ct. at 913-14.

Plaintiffs' facial overbreadth challenges fail.  In facial, "preenforcement" challenges to a statute on First Amendment grounds, plaintiffs must show that there is a reasonable likelihood that the government will enforce the challenged law against them; that the plaintiff intends to violate the challenged law; and that the challenged law applies to them by its terms or as interpreted by the government.  <u>Lopez</u>, 205 F.3d at 786.  Facial invalidation is "strong medicine that is not to be casually employed."   <u>United States v. Williams</u>, 553 U.S. 285, 293 (2008) (citation omitted).  Facial challenges "rest on speculation," ask for "a rule

of constitutional law broader than is required by the precise facts," and "prevent[]
laws embodying the will of the people from being implemented in a manner
consistent with the Constitution."  Washington State Grange v. Washington State
Republican Party, 552 U.S. 442, 450-51 (2008) (citations omitted).  Therefore,
courts have "vigorously enforced the requirement that a statute's overbreadth be
substantial, not only in an absolute sense, but also relative to the statute's plainly
legitimate sweep."  Williams, 553 U.S. at 293 (citations omitted).  "The mere fact
that one can conceive of some impermissible applications of a statute is not
sufficient to render it susceptible to an overbreadth challenge."  Id. at 303 (citation
and quotation omitted).

The statute has a plainly legitimate scope, and there is a substantial
relationship between the disclosure requirements and Montana's informational
interest.  The statute gives a person of ordinary intelligence a reasonable
opportunity to know what is prohibited, does not delegate policy matters for
resolution on an ad hoc and subjective basis, and does not operate to inhibit
exercise of First Amendment freedoms.

Plaintiffs have not established a colorable claim for relief under
§ 13-35-225(a)(3), and fail to demonstrate a likelihood that they will prevail on the
merits.

**D.**    **<u>Plaintiffs Have Not Shown They Will Likely Prevail in
Their Challenge to Montana's Political Libel Statute</u>.**

Under Mont. Code Ann. § 13-37-131(1), it is unlawful to "misrepresent a
candidate's public voting record or any other matter that is relevant to the issues of
the campaign with knowledge that the assertion is false or with reckless disregard
of whether or not the assertion is false." The statute regulates defamation, and
expressly targets "political civil libel." Constitutionally-required scienter is
expressly included in the statute.

The statute is limited to representations about a public figure (a candidate)
regarding specific matters (votes made by the candidate or facts relevant to the
particular campaign involving the candidate). The statute does not purport to
regulate political speech unrelated to representations about a candidate. The
Commissioner of Political Practices interprets the statute as being limited to
defamation regarding candidates. <u>See</u> Declaration of David B. Gallik.

Plaintiffs argue this "false statement" statute is overbroad and is an
unconstitutional content-based restriction on speech. As demonstrated above,
Montana has a legitimate informational interest in speech regarding a candidate's
voting record. Moreover, as demonstrated by Supreme Court precedent, Montana
has a recognized interest in regulating defamatory speech because such speech is
not entitled to First Amendment protection.

"[T]the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection." Garrison v. Louisiana, 379 U.S. 64, 75 (1964). See also, United States v. Alvarez, 617 F.3d 1198, 1207 (9th Cir. 2010), cert. granted 2011 U.S. LEXIS 7481 (October 17, 2011). Since 1791, the First Amendment has permitted restrictions upon the content of speech in a few limited areas, including defamation. United States v. Stevens, ___ U.S. ___, 130 S. Ct. 1577, 1584 (2010); United States v. Alvarez, 617 F.3d at 1207; New York Times v. Sullivan, 376 U.S. 254, 268 (1964); Beauharnais v. Illinois, 343 U.S. 250, 254-55 (1952). The statute at issue incorporates the "actual malice" test for defamation articulated by the Supreme Court, that defamatory falsehood relating to official conduct exposes the speaker to liability (or civil sanction) only if the statement is made "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times v. Sullivan, 376 U.S. at 279-82. Innocent or merely negligent false statements about public officials may enjoy First Amendment protection, but false statements made with scienter enjoy no such protection. United States v. Alvarez, 617 F.3d at 1209. "The harm caused by defamation is thought to be irreparable even when the truth is brought to light." Id. at 1211. The statute is constitutional with respect to representations about candidates because it follows established Supreme Court case law on defamation in the First Amendment context.

To the extent Plaintiffs argue the statute extends to speech that does not concern the voting record or other matters regarding a candidate, Plaintiffs have failed to show a reasonable likelihood that the government will enforce the political libel law against them.  The statute is therefore inapplicable to the Plaintiffs, either by its terms or as interpreted by the government. This weighs against both the plaintiffs' claims that they intend to violate the law, and also their claims that the government intends to enforce the law against them. See Lopez, 205 F.3d at 786-87.

Plaintiffs have not established a colorable claim for relief under § 13-37-131, and fail to demonstrate a likelihood that they will prevail on the merits.

## IV.    THE REMAINING PRONGS OF THE PRELIMINARY INJUNCTION TEST WEIGH AGAINST PLAINTIFFS.

In addition to failing to showing a likelihood of success on the merits, Plaintiffs have not and cannot meet the other prongs of the preliminary injunction test.  They have not shown they will suffer irreparable harm if the challenged statutes are not preliminarily enjoined; the balance of hardships does not weigh in their favor; and, a preliminary injunction would not be in the public interest.

## A.     Irreparable Harm

With respect to their challenge to contribution limits, Plaintiffs are free to contribute to their chosen candidates on the same terms as all other individuals, PACs and political parties in Montana.  They will not be competitively disadvantaged and will not, therefore, suffer irreparable harm.

Similarly, the ban on corporate contributions to candidates and political committees does not materially interfere with Plaintiffs' ability to participate fully in the political process.  As a result of Citizens United, corporate voices may be heard through independent expenditures.  Because the Ninth Circuit in Thalheimer recognized that a ban on corporate contributions to candidates remains constitutional based upon Beaumont, Plaintiffs will suffer no cognizable harm if the status quo remains in place.

Plaintiffs have not shown that they will suffer irreparable harm if the Court does not preliminarily enjoin the statutes requiring candor and truthfulness about attacks on candidates (§§ 13-35-225(3)(a), and 13-37-131).  They are under no realistic threat of prosecution, and the statutes merely require a basic modicum of truthfulness with respect to attack ads, without hindering speakers' abilities to engage in aggressive, hard-hitting campaign tactics.

## B.     Balance of Hardships

The balance of hardships does not favor Plaintiffs.  To the contrary, it would be the State of Montana and its electoral process that would suffer hardship if this Court were to grant Plaintiffs' motion for a preliminary injunction.

Election season is fully under way, and candidates are actively seeking campaign contributions.  They are playing by the same rules, which have been in place for years.  There is no doubt that contribution limits are constitutional; Plaintiffs simply argue that Montana's limits are too low.  A preliminary injunction, however, would effectively remove all limits, and substantially alter the electoral process in Montana.

There is no doubt that the ban on corporate contributions to candidates is constitutional.  A preliminary injunction allowing corporate contributions, however, would drastically and substantially alter the electoral process in Montana, and would create a free-for-all during the ongoing campaigns.

The balance of hardships also weighs in favor of the state with respect to whether the Court should preliminarily enjoin the enforcement of the disclaimer and political libel statutes.  Plaintiffs are free to engage in the kinds of hard-hitting campaign tactics they obviously espouse.  It does not create any hardship or burden on them to require that in doing so, they base their attacks on facts.

**C.      Public Interest**

Finally, a preliminary injunction would not be in the public interest.

Montana has a strong, and recognized interest in reasonably regulating the

democratic, electoral process.  Plaintiffs' attacks on Montana's laws are

far-reaching, and if successful, would significantly and adversely affect the

electoral process in Montana.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion for a

preliminary injunction.  Plaintiffs cannot demonstrate that they are likely to prevail

at trial, and fail to satisfy the other requirements for a preliminary injunction.

Respectfully submitted this 28th day of October, 2011.

STEVE BULLOCK
Montana Attorney General
MICHAEL G. BLACK
ANDREW I. HUFF
Assistant Attorneys General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401


By:     */s/ Michael G. Black*
             MICHAEL G. BLACK
             Assistant Attorney General
             Counsel for Defendant

## CERTIFICATE OF MAILING

I hereby certify that on October 7, 2011, I electronically filed the foregoing with the clerk of the court for the United States District Court for the District of Montana, Billings Division, by using the appellate cm/ecf system.

Participants in the case who are registered cm/ecf users will be served by the appellate cm/ecf system.

Dated:    October 28, 2011          */s/ Michael G. Black*
                                    MICHAEL G. BLACK
                                    Assistant Attorney General
                                    Counsel for Respondent

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 8,209 words, excluding certificate of service and certificate of compliance.

                                    */s/ Michael G. Black*
                                    MICHAEL G. BLACK
                                    Assistant Attorney General
                                    Counsel for Respondent