IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

**FILED**

FEB 2 4 2012

, ATRICK E. DUFFY, CLE .-.

·Y_____
**DEPUTY CLERK, HELENA**

| | | |
|---|---|---|
| DOUG LAIR, STEVE DOGIAKOS, AMERICAN TRADITION PARTNERSHIP, AMERICAN TRADITION PARTNERSHIP PAC, MONTANA RIGHT TO LIFE ASSOCIATION PAC, SWEET GRASS COUNCIL FOR COMMUNITY INTEGRITY, LAKE COUNTY REPUBLICAN CENTRAL COMMITTEE, BEAVERHEAD COUNTY REPUBLICAN CENTRAL COMMITTEE, JAKE OIL LLC, JL OIL LLC, CHAMPION PAINTING INC, and JOHN MILANOVICH, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CV 12-12-H-CCL |
| Plaintiffs, | ) ) ) | ORDER GRANTING AND DENYING MOTION FOR PRELIMINARY INJUNCTION |
| vs. | ) ) | |
| JAMES MURRY, in his official capacity as Commissioner of Political Practices; STEVE BULLOCK, in his official capacity as Attorney General of the State of Montana; and LEO GALLAGHER, in his official capacity as Lewis and Clark County Attorney; | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

1

The plaintiffs filed this lawsuit, challenging several of Montana's campaign finance and election laws. They move the Court for a preliminary injunction enjoining the enforcement of those statutes. The defendants oppose the motion.

On February 17, 2012, the Court held a hearing on the motion. Noel Johnson of Bopp, Coleson, & Bostrom and James Edward Brown of Doney Crowley Payne Bloomquist P.C. appeared for the plaintiffs. Michael Black and Andrew Huff of the Montana Attorney General's office appeared for the defendants.

The Court grants the motion in part and denies it in part.

### BACKGROUND

The plaintiffs are individuals, corporations, political committees, associations, and political parties that have expressed a desire to take actions that would violate several of Montana's campaign finance and election laws:

- Montana Code Annotated § 13–35–225(3)(a), which requires authors of political election materials to disclose another candidate's voting record;

- Montana Code Annotated § 13–37–131, which makes it unlawful for a person to misrepresent a candidate's public voting record or any other matter relevant to the issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether it is false;

- Montana Code Annotated § 13–37–216(1), (5), which limits

2

>       contributions that individuals and political committees may
>       make to candidates;

- Montana Code Annotated § 13–37–216(3), (5), which imposes
  an aggregate contribution limit on all political parties; and

- Montana Code Annotated § 13–35–227, which prevents corporations
  from making either direct contributions to candidates or independent
  expenditures on behalf of a candidate.

The plaintiffs argue that each of these statutory provisions violates the First
Amendment of the United States Constitution.

The plaintiffs have launched a multi-front attack on at least one of these
provisions—Section 13–35–227's ban on corporate independent expenditures.
Many of the plaintiffs in this case previously sued the defendants in state court,
claiming that the ban is unconstitutional. The state district court, Judge Sherlock,
agreed with the plaintiffs in light of the U.S. Supreme Court's decision in *Citizens
United v. FEC*, 130 S. Ct. 876 (2010), where the Supreme Court held that bans on
corporate independent expenditures violate the First Amendment.

The Attorney General and Commissioner of Political Practices then
appealed to the Montana Supreme Court. Notwithstanding *Citizens United*, the
Montana Supreme Court upheld Montana's ban on corporate independent
expenditures. *See W. Tradition Partn. v. Atty. Gen. of the St. of Mont.*, 2012 MT
328. The Montana Supreme Court reasoned that Montana's storied history of

3

political corruption demonstrates that the State has a compelling interest in

preventing corporations from making independent expenditures on a candidate's

behalf. *Id.* at ¶ 48.

Justice Nelson, in his dissent, expressed sympathy for the majority's ruling

in favor of the State, but he could not agree with the majority in light of *Citizens

United.* He wrote, "The language of the *Citizens United* majority opinion is

remarkably sweeping and leaves virtually no conceivable basis for muzzling or

otherwise restricting corporate political speech in the form of independent

expenditures." *Id.* at ¶ 62 (footnote omitted).

Justice Baker also dissented. *Id.* at ¶¶ 49–60. She agreed with Justice

Nelson that *Citizens United* should have controlled the Court's decision. *Id.* at ¶

49. But, unlike the majority, she would have expressly ruled to preserve the

disclosure requirements that apply to independent expenditures in order to further

the interest in preventing corruption. *Id.* at ¶ 50. Justice Baker poignantly

concluded:

> I believe it is our unflagging obligation, in keeping with the courts' duty
> to safeguard the rule of law, to honor the decisions of our nation's
> highest Court. "Americans today accept the [United States Supreme]
> Court's role as guardian of the law. They understand the value to the
> nation of following Court decisions, . . . even when they disagree with
> a Court decision and even when they may be right and the decisions may
> be wrong."

4

*Id.* at ¶ 60 (quoting Stephen Breyer, *Making Our Democracy Work: A Judge's View* 214 (Alfred A. Knopf 2010)).

One of the plaintiffs, Western Tradition Partnership (now American Tradition Partnership), agreed with the dissenting opinions and asked the U.S. Supreme Court to either summarily reverse the Montana Supreme Court or stay its decision pending American Tradition Partnership's petition for a writ of certiorari. *See Am. Tradition Partn., Inc. v. Bullock*, Cause No. 11A762. On February 17, 2012—one day after this Court heard oral argument on the plaintiffs' motion for a preliminary injunction—the U.S. Supreme Court granted the application to stay the Montana Supreme Court's decision.

Against this backdrop, the Court turns to the plaintiffs' motion. Because the parties are familiar with the facts of this case, they are restated here only when necessary to explain the Court's decision.

### PRELIMINARY INJUNCTION STANDARD

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011) (quoting *Winter v. NRDC*, 555 U.S. 7, 24–25 (2008)).

5

"[T]he moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Id.* at 1116 (citing *Klein v. City of San Clemente,* 584 F.3d 1196, 1201 (9th Cir. 2009)).

ANALYSIS

The plaintiffs argue that the five statutory provisions described above are unconstitutional under the First Amendment. The defendants disagree and argue that the plaintiffs do not have standing to bring this challenge. As explained below, though, the plaintiffs have standing and they are entitled to injunctive relief on some, but not all, of their claims.

**I.     Standing**

In the first amendment context, "'[I]t is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff.'" *Wong v. Bush*, 542 F.3d 732, 736 (2008) (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154–55 (9th Cir. 2000)).

6

Here, in their verified complaint,[1] the plaintiffs thoroughly laid out their

plans and desire to violate the statutes at issue. *See* Compl. ¶¶ 24–102 (dkt # 1).

And the plaintiffs have shown there is a "credible threat that the challenged

provision[s] will be invoked against [them]." *See Wong*, 542 F.3d at 736. Some of

the plaintiffs, for example, have been recently threatened with lawsuits for

violating the laws at issue here. *See* Pl.'s Preliminary Injunction Memo. 22–23

(dkt # 10). And, some of the plaintiffs have had contributions returned to them by

a candidate after that candidate had already received the maximum contribution

allowed by statute. *See id.* at 11.

In short, the plaintiffs have sufficiently shown that (1) they "intend[ ] to

engage in a course of conduct arguably affected with a constitutional interest" and

(2) "there is a credible threat that the challenged provision will be invoked against

[them]."

## II.   Montana Code Ann. § 13–35–225(3)(a): vote-reporting requirement

The plaintiffs challenge the vote-reporting requirement in Section

13–35–225(3)(a):

> Printed election material described in subsection (1) that includes
> information about another candidate's voting record must include:

---

[1] "A verified complaint may be treated as an affidavit, and, as such, it is
evidence that may support injunctive relief." *Thalheimer*, 645 F.3d at 1116
(citations omitted).

(i) a reference to the particular vote or votes upon which the information is based;

(ii) a disclosure of contrasting votes known to have been made by the candidate on the same issue if closely related in time; and

(iii) a statement, signed as provided in subsection (3)(b), that to the best of the signer's knowledge, the statements made about the other candidate's voting record are accurate and true.

The plaintiffs argue that this statute is unconstitutional because it is unconstitutionally vague, overbroad, and fails strict scrutiny review. The Court agrees, at least in part.

A statute is unconstitutionally vague if it "fails to clearly mark the boundary between permissible and impermissible speech . . . ." *Buckley v. Valeo*, 424 U.S. 1, 41 (1976). "Statutes that are insufficiently clear are void for three reasons: '(1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on 'arbitrary and discriminatory enforcement' by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms.'" *Humanitarian Law Project v. U.S. Treas. Dept.*, 578 F.3d 1133, 1146 (9th Cir. 2009) (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998)). Stated differently, "A statute must be sufficiently clear so as to allow persons of 'ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Foti*, 146 F.3d at 638 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)); *see also*

8

*Humanitarian Law Project*, 578 F.3d at 1146.

Here, the problematic portion of Section 13–35–225(3)(a) is subsection (ii). Under that subsection, when printed election material includes information about a candidate's voting record, the material must also include "a disclosure of contrasting votes known to have been made by the candidate on the same issue if closely related in time." Mont. Code Ann. § 13–35–225(3)(a)(ii).

As the plaintiffs discuss, the phrase "closely related in time" is not defined anywhere in Montana's statutes or regulations, and a candidate could not possibly know to what "closely related in time" refers. The defendants argue that "closely related in time" simply refers to votes that occur in the same legislative session as the votes discussed in the printed election material. That is one possibility, but are there others?

Could the phrase "closely related in time" also include the previous legislative session? Yes, possibly. A candidate's vote on a particular tax issue in 2009 could be construed as "closely related in time" to a vote on the same tax issue in 2011 (the following legislative session). But someone else might construe it differently to mean, as the defendants suggest, the same legislative session. And that is the point—the statute utterly "fails to clearly mark the boundary between permissible and impermissible speech." *Buckley*, 424 U.S. at 41. As such, it is unconstitutionally vague. *Id.*

9

Similarly, the phrase "the same issue" is unconstitutionally vague. Suppose, for example, that the Montana Legislature is addressing the question of campaign financing and that a state senator votes to raise the contribution limit for individuals and political committees in gubernatorial races from $500 to $1,000. But suppose also that the same senator votes to lower that limit for political parties from $18,000 to $13,000. Do the two votes involve "the same issue" under Section 13–35–225(3)(a)(ii)? Maybe. Broadly defined, both votes concern campaign financing for gubernatorial races. But, narrowly defined, they are different—one concerns individuals and political committees and the other concerns political parties. The question of sameness, then is a question of scale. At one level the issues are the same, but, at another, they are not. As such, "persons of ordinary intelligence" do not have "a reasonable opportunity to know what is prohibited" by the phrase "the same issue." *See Foti*, 146 F.3d at 638. The phrase "the same issue" is therefore unconstitutionally vague. *Id.*

Each of the elements for injunctive relief is met here. First, as discussed above, the plaintiffs are likely to succeed on their claim that 13–35–225(3)(a) violates the First Amendment because it is unconstitutionally vague. Second, the enforcement of Section 13–35–225(3)(a) would create irreparable harm because, "'The loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Thalheimer*, 645 F.3d at 1128

(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Finally, the equities and public interest in "upholding free speech and association rights outweigh[ ] the interest in continued enforcement" of Section 13–35–225(3)(a). As a result, the Court preliminarily enjoins the defendants from enforcing Section 13–35–225(3)(a).

Since the Court enjoins the enforcement of Section 13–35-225(3)(a) on account of its unconstitutional vagueness, the Court need not address the remaining bases upon which the statute might be unconstitutional.[2] Suffice it to say that the plaintiffs stand at least a colorable chance of prevailing on one or more of those alternative bases. *See Citizens United*, 130 S. Ct. at 895–96 (discussing prior restraint); *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1004–05 (9th Cir. 2010) (discussing the application of "exacting scrutiny" to disclosure requirements); *ACLU v. Heller*, 378 F.3d 979, 987 (9th Cir. 2004) (discussing the application of strict scrutiny to content-based restrictions on election communications).

**III.   Montana Code Ann. § 13–37–131: political civil libel**

Next, the plaintiffs challenge Montana's political-civil-libel statute—Montana Code Annotated § 13–37–131—which makes it unlawful for a

---

[2] For the reasons discussed in *Randall v. Sorrell*, 548 U.S. 230, 262 (2006), the Court does not sever the unconstitutional portions of Section 13–35–225(3)(a) from the remaining portions of the statute that might be constitutional.

11

person to "misrepresent" a candidate's "public voting record or any other matter

that is relevant to the issues of the campaign with knowledge that the assertion is

false or with a reckless disregard of whether or not the assertion is false."[3] Like the

statute discussed above, the plaintiffs claim the political-civil-libel statute is

unconstitutionally vague, overbroad, and fails strict scrutiny. The plaintiffs also

claim that Section 13–37–131 is unconstitutional as applied to lobbyists taking

positions on political issues. As above, the Court agrees, at least in part, with the

---

[3] Section 13–37–131 provides:

(1) It is unlawful for a person to misrepresent a candidate's public voting record or any other matter that is relevant to the issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false.

(2) It is unlawful for a person to misrepresent to a candidate another candidate's public voting record or any other matter that is relevant to the issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false.

(3) For the purposes of this section, the public voting record of a candidate who was previously a member of the legislature includes a vote of that candidate recorded in committee minutes or in journals of the senate or the house of representatives. Failure of a person to verify a public voting record is evidence of the person's reckless disregard if the statement made by the person or the information provided to the candidate is false.

(4) A person violating subsection (1) or (2) is liable in a civil action brought by the commissioner or county attorney pursuant to 13–37–124 for an amount up to $1,000. An action pursuant to this section is subject to the provisions of 13–37–129 and 13–37–130.

12

plaintiffs.

The plaintiffs argue the phrase "relevant to the issues of the campaign" is unconstitutionally vague. The plaintiffs are correct. There is simply no way for a person or an organization to know with certainty whether an issue is "relevant" to a candidate's campaign. The plaintiffs poignantly ask whether this statute is "restricted to statements about the candidates' prior and current government service? Or does it also include statements about such things as candidates' academic backgrounds? Their spouses? Their current or past employment? Their spending habits?"

The plaintiffs' questions are well taken. A person of "ordinary intelligence" would not have "a reasonable opportunity to know what is prohibited" under the statute. *Foti*, 146 F.3d at 638. The defendants counter that the statute is not vague because the speaker's speech determines the relevancy. In other words, if a person says something about a candidate, then that makes the speech "relevant to the issues of the campaign." The Court disagrees. If the defendants were correct, then the statute would be unconstitutionally overbroad. Suppose, for example, that Candidate A says that Candidate B has blue eyes when, in fact, she has brown eyes. Is that statement "relevant to the issues of the campaign"? Under the defendants' theory, yes. But, as we are often reminded during elections, not everything that is said during a campaign is truly "relevant to the issues of the

13

campaign." Moreover, relevancy is in the eye of the beholder—what is relevant to one voter might not be relevant to another.

Since there is no way to know what constitutes a matter "relevant to the issues of the campaign," Section 13–37–131 "fails to clearly mark the boundary between permissible and impermissible speech . . . ." *Buckley*, 424 U.S. at 41. As such, it is unconstitutionally vague. *Id.*

As above, each of the elements for injunctive relief is met here. First, the plaintiffs are likely to succeed on their claim that Section 13–37–131 violates the First Amendment. Second, enforcement of Section 13–37–131 would create irreparable harm because, "'The loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Thalheimer*, 645 F.3d at 1128 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Finally, the equities and public interest in "upholding free speech and association rights outweigh[ ] the interest in continued enforcement" of Section 13–37–131. As a result, the Court preliminarily enjoins the defendants from enforcing Section 13–37–131.

Since the Court enjoins the enforcement of Section 13–37–131 on account of its unconstitutional vagueness, the Court need not address the remaining bases

14

upon which the statute might be unconstitutional.[4] But, again, the plaintiffs stand

at least a colorable chance of prevailing on one or more of those alternative

arguments. *See e.g. Wash. St. Grange v. Wash. St. Republican Party*, 552 U.S.

442, 449 n.6 (2008) (discussing when a law is unconstitutionally overbroad);

*United States v. Alvarez*, 617 F.3d 1198 (9th Cir. 2010) (discussing government

restriction of false statements), *rehearing en banc denied*, 638 F.3d 66, 674 (9th

Cir. 2011); *see also McIntyre v. Ohio Elections Commn.*, 514 U.S. 334 (1995).

## IV.    Montana Code Annotated § 13–37–216(1), (5): contribution limits for individuals and political committee

Section 13–37–216(1) imposes the following contribution limits on

individuals and political committees: $500 for governor and lieutenant governor,

$250 for other statewide offices, and $130 for any other public office. The

plaintiffs argue that these limits are unconstitutional. Controlling Ninth Circuit

precedent suggests the opposite is true, though, and the plaintiffs are therefore not

likely to succeed on their claim, based on the facts presented to the Court thus far.

That could change, though, as the factual evidence continues to develop.

Unlike corporate independent expenditures, which are subject to strict

scrutiny under *Citizens United*, limits on campaign contributions "need only be

---

[4] For the reasons discussed in *Randall*, the Court does not sever the unconstitutional portions of Section 13–35–225(3)(a) from the remaining portions of the statute that might be constitutional. 548 U.S. at 262.

'closely drawn' to match a sufficiently important interest to survive a constitutional challenge."[5] *Thalheimer*, 645 F.3d at 1117–18 (quoting *Randall v. Sorrell*, 548 U.S. 230, 247 (2006) (plurality)); *see also Nixon v. Shrink Mo. Govt. PAC*, 528 U.S. 377, 387–88 (2000); *Buckley*, 424 U.S. 1, 25 (1976); *see also Family PAC v. McKenna*, ___ F.3d ___, 2012 WL 266111 (9th Cir. Jan. 31, 2012). Contribution limits are "closely drawn" if they: "(a) focus narrowly on the state's interest, (b) leave the contributor free to affiliate with a candidate, and (c) allow the candidate to amass sufficient resources to wage an effective campaign." *Mont. Right to Life Assn. v. Eddleman*, 343 F.3d 1085, 1092 (9th Cir. 2003), *cert. denied*, 125 S. Ct. 47 (2004).

## A. The Ninth Circuit's decision in *Montana Right to Life Assn. v. Eddleman*

In *Eddleman*, the Ninth Circuit expressly held that Montana's contribution limits for individuals and political committees in Section 13–37–216 are constitutional. 343 F.3d 1085. The U.S. Supreme Court later denied the Montana Right to Life Association's petition for a writ of certiorari. 125 S. Ct. 47. In its decision, the Ninth Circuit relied on the familiar analytic framework set out in *Buckley* and *Shrink Missouri*, among other cases. The court offered a thorough

---

[5] The plaintiffs argue that strict scrutiny applies in light of *Citizens United*, but their argument fails. The Ninth Circuit expressly held that *Citizens United* did not change the standard of review that applies to contribution limits. *Thalheimer*, 645 F.3d at 1117–18.

16

discussion of Section 13–37–216, explaining that (1) the State of Montana has an anti-corruption interest that justifies the contribution limits and (2) the statute is closely drawn. 343 F.3d at 1092–96.

*Eddleman* arrived at the Ninth Circuit after a four-day bench trial before Judge Shanstrom, who made extensive findings of fact. *Id.* at 1091, 1098. Applying *Shrink Missouri* and *Buckley*—and relying on the findings of facts—the Ninth Circuit first observed that Montana has a "sufficiently important interest" that justifies contribution limits. *Id.* at 1092–93. In particular, the court pointed to the findings of fact made by Judge Shanstrom, which, among other things, demonstrated that "special interests funnel more money into campaigns when particular issues approach a vote 'because it gets results.'" *Id.* at 1092. The court's decision is replete with other findings of fact that show how money influences campaigns in Montana. *Id.* at 1092–93.

Having concluded that Montana has a sufficiently important interest that justifies contribution limits, the Ninth Circuit next examined whether the limit amounts are closely drawn to avoid unnecessary abridgment of associational freedoms. *Id.* at 1093–96. The court cited *Buckley* and observed that a campaign contribution limit is "closely drawn" if it:

> focus[es] on the narrow aspect of political association where the actuality and potential for corruption have been identified-while leaving persons free to engage in independent political expression, to associate

17

actively through volunteering their services, and to assist in a limited but nonetheless substantial extent in supporting the candidates and committees with financial resources.

*Id.* at 1094–93 (quoting *Buckley*, 424 U.S. at 28). Moreover, under *Shrink Missouri*, contribution limits should be upheld unless they are "'so radical in effect as to render political association ineffective, drive the sound of a candidate's voice beyond the level of notice, and render contributions pointless.'" *Eddleman*, 343 F.3d at 1094 (quoting *Shrink Mo.*, 528 U.S. at 397). When making this determination, courts "look at all dollars likely to be forthcoming in a campaign, rather than the isolated contribution," as well as "whether the candidate can look elsewhere for money, the percentage of contributions that are affected, the total cost of a campaign, and how much money each candidate would lose." *Id.* (citations omitted).

The Ninth Circuit applied this framework and concluded that Section 13–37–216 is closely drawn because:

1.  the contribution limits affect only the top 10% of contributions, *id.* at 1094;

2.  Section 13–37–216 increased the amount of money that political parties can contribute to a candidate, *id.*;

3.  the State of Montana remains one of the least expensive states in which to run a campaign, *id.* at 1094–95; and

4.  the contribution limits do not prevent Montana candidates from mounting effective campaigns, *id.* at 1095.

18

In its conclusion, the Ninth Circuit noted that questions of contribution limits are better left to the legislature and Montana voters, not the courts: "The voters of Montana are entitled to considerable deference when it comes to campaign finance reform initiatives designed to preserve the integrity of their electoral process." *Id.* at 1098 (citing *FEC v. Beaumont,* 539 U.S. 146, 156–58 (2003)).

*Eddleman* has not been overruled. Indeed, as discussed above, the Supreme Court denied the Montana Right to Life Association's petition for a writ of certiorari. 125 S. Ct. 47. The most significant case dealing with contribution limits since *Eddleman* was decided is the U.S. Supreme Court's plurality decision in *Randall,* 548 U.S. 230.

## B.    The U.S. Supreme Court's decision in *Randall v. Sorrell*

In *Randall,* which was decided a few years after *Eddleman,* the Supreme Court struck down Vermont's contribution-limit statute.[6] 518 U.S. 230. *Randall,* though, is not inconsistent with *Eddleman* in any way. The Supreme Court applied precisely the same law that the Ninth Circuit did in *Eddleman,* and Vermont's former law is distinguishable from Montana's in very important ways.

Vermont's law—"Act 64"—imposed contribution limits of $400 for the

---

[6] As a plurality decision, *Randall* is highly persuasive, but not binding, authority. *Texas v. Brown,* 460 U.S. 730, 737 (1983).

19

offices of governor, lieutenant governor, and other state-wide offices; $300 for state senator; and $200 for state representative. *Id.* at 238.

As the Ninth Circuit did in *Eddleman*, the Supreme Court based its analysis of the Vermont law on its prior opinions in *Buckley* and *Shrink Missouri*. The Court observed that "contribution limits are permissible as long as the Government demonstrates that the limits are 'closely drawn' to match a 'sufficiently important interest.'" *Randall*, 518 U.S. at 247 (quoting *Buckley*, 424 U.S. at 25). It also recognized that it has "consistently upheld contribution limits in other statutes." *Id.* (citing *Shrink Mo.*, 528 U.S. 377; *Cal. Med. Assn. v. FEC*, 453 U.S. 182). Nevertheless, "[C]ontribution limits might *sometimes* work more harm to protected First Amendment interests than their anticorruption objectives could justify." *Id.* at 247–48 (emphasis original) (citing *Shrink Mo.*, 528 U.S. at 395–97; *Buckley*, 424 U.S. at 21). The critical question, after *Buckley*, is whether the "contribution limits prevent candidates from 'amassing the resources necessary for effective [campaign] advocacy.'" *Id.* at 248 (quoting *Buckley*, 424 U.S. at 21).

As the Ninth Circuit did in *Eddleman*, the Supreme Court acknowledged that, ordinarily, the state legislatures are better equipped to empirically evaluate contribution limits. *Id.* at 248. But it remarked, "[A]s *Buckley* acknowledged, we must recognize the existence of some lower bound." *Id.* Courts must look for "'danger signs' that contribution limits are low enough to threaten 'democratic

20

accountability.'" *Thalheimer*, 645 F.3d at 1127 (quoting *Randall*, 548 U.S. at 248–49).

The Supreme Court found there were a number of "danger signs" with regard to Vermont's law. Significantly, unlike Section 13–37–216 here, Vermont's contribution limits were not adjusted for inflation. *Randall*, 548 U.S. at 250–51, 261. Moreover, the Supreme Court pointed to Montana's contribution-limit law, among others, and observed that Vermont's limits were the lowest in the country. *Id.* at 250. In total, there were five principal factors that caused the Supreme Court to declare Vermont's law unconstitutional:

1.  Vermont's contribution limits significantly restricted the amount of funding available for challengers to run competitive campaigns, *id.* at 253;

2.  Vermont's law applied the same, low contribution limits to political parties, *id.* at 256;

3.  volunteer services provided without compensation were excluded from the definition of "contribution," but travel expenses and other expenses that volunteers incur were not, *id.* at 259;

4.  the contribution limits were not adjusted for inflation, *id.* at 261; and

5.  the record did not show there was a "special justification" that might warrant such a low or restrictive limit, *id.* at 261.

After concluding that Vermont's contribution limits were unconstitutional, the Supreme Court further held that the constitutional portions of the law could not be

21

severed from the ones that were unconstitutional: "We add that we do not believe it

possible to sever some of the Act's contribution limit provisions from others that

might remain fully operative." *Id.* at 262.

## C.   *Randall*'s effect on *Eddleman* and this case

The *Randall* Court did not draw a bright line demarcating the bounds of

acceptable contribution limits. And, important here, it did not change the standard

that applies to contribution limits. It relied primarily on *Buckley* and *Shrink*, just as

the Ninth Circuit did in *Eddleman*.

Nothing the Supreme Court said or did in *Randall* is inconsistent with

*Eddleman*. In particular, none of the five factors discussed in *Randall* apply to

Montana's contribution limits: (1) Montana's limits are greater than Vermont's

former limits and, as the Ninth Circuit held in *Eddleman*, those limits do not

prevent candidates from mounting successful campaigns; (2) Montana's limits for

political parties are not the same as those for individuals and political committees;

(3) Montana's limits do not treat volunteer services and expenses differently; (4)

Montana's limits are adjusted for inflation; and (5) as the Ninth Circuit held in

*Eddleman*, the facts show that Montana's contribution limits are justified.

This preliminary conclusion does not imply that this Court will reach the

same conclusion further down the road in this litigation. The plaintiffs might, for

instance, marshal evidence showing that the contribution limits (adjusted for

inflation), while formerly adequate, no longer allow candidates to "'amass[ ] the resources necessary for effective [campaign] advocacy.'" *Randall*, 518 U.S. at 248 (quoting *Buckley*, 424 U.S. at 21). But the record does not support that assessment at this point, and the Court will not preliminarily enjoin the enforcement of Section 13–37–216.

## V.   Montana Code Annotated § 13–37–216(3), (5): aggregate contribution limits for political parties

Section 13–37–216(3) imposes the following contribution limits on political parties: $18,000 for governor and lieutenant governor, $2,600 for public service commissioner, $1,050 for state senators, and $650 for any other public officer. Each of these amounts is adjusted for inflation. This argument, like the previous, fails on the record currently before the Court.

Much of the plaintiffs' argument is based on their contention that contribution limits for political parties are subject to strict scrutiny under *Citizens United*. Not so. The Ninth Circuit, in *Thalheimer*, made clear that contribution limits—including those imposed on political parties—are subject to the "closely drawn" standard laid out in *Buckley* and *Shrink Missouri*. *See Thalheimer*, 645 F.3d at 1117–18.

In *Eddleman*, the Ninth Circuit addressed Montana's contribution limits for individuals and political committees, but it did not explicitly address the limits for

23

political parties. It did, however, note that the political-party limits had been increased. In fact, the court upheld the limits for individuals and political committees, in part, because of the increased limits for political parties. *See Eddleman*, 343 F.3d at 1088–89, 1094.

In *Randall*, the Supreme Court addressed Vermont's contribution limit for political parties. The Court declared that limit unconstitutional, but Vermont's law was much different than Montana's. The only similarity that the two laws share is that they both impose aggregate limits—that is, the limit applies to the total of all party contributions. *Randall*, 548 U.S. at 257. Importantly, though, Vermont's law, unlike Montana's, imposed the same limits on political parties that it imposed on individuals and political committees. *Id.* Montana's limits for political parties are much higher and, depending on the office, the contribution limits are between five and 36 times greater than individual and political committee limits.

The Ninth Circuit recently addressed limits for political parties in *Thalheimer*. There, the district court had granted a preliminary injunction enjoining San Diego's $1,000 contribution limit for political parties. 645 F.3d at 1126–27. The Ninth Circuit did not necessarily agree with the district court's conclusion, but it held that, since the question was a close one, the district court did not abuse its discretion by granting the injunction. *Id.*

The district court later struck down the $1,000 contribution limit as

24

unconstitutional. 2012 WL 177414, *15–*19. A key factor in the district court's

decision was that the limit imposed on political parties was "merely twice that of

individuals." *Id.* at *17. As the district court explained:

> [T]he fact that the limitation contributions by political parties is only
> twice that of the individual limit, appears to give "no weight at all" to
> the required balance between: (1) "the need to allow individuals to
> participate in the political process by contributing to political parties that
> help elect candidates" with (2) "the need to prevent the use of political
> parties 'to circumvent contribution limits that apply to individuals.' "

*Id.* at 18.

There are, of course, other factors that the Court must consider in addition

to how the political-party limits compare to the individual and political committee

limits. The Court, for example, should consider the factors laid out in *Eddleman*

and *Randall*, as described in the previous section. But the fact that Montana's

contribution limit for political parties is five to 36 times greater than the individual

and political-committee limits, which the Ninth Circuit upheld in *Eddleman*,

counsels against a preliminary injunction. At trial, the plaintiffs might come

forward with facts showing that the contribution limits for individuals, political

committees, and political parties are inadequate. But the plaintiffs are not likely to

succeed at this point.

## VI.   Montana Code Annotated § 13–35–227: corporate contributions and independent expenditures

Montana Code Annotated § 13–35–227 bans both corporate contributions

and independent expenditures made in connection with a candidate or political

committee that supports or opposes a candidate or a political party.[7] The plaintiffs

argue that these bans are unconstitutional. The plaintiffs' argument with respect to

corporate contributions fails. Both the U.S. Supreme Court and the Ninth Circuit

have held that bans on corporate contributions are constitutional. The Court need

not address the issue of corporate independent expenditures because, as a practical

matter, that issue is moot in light of the U.S. Supreme Court's order staying the

Montana Supreme Court's decision in *Western Tradition Partnership*.

## A.    Corporate contributions

In *Beaumont*, 539 U.S. 146, the United States Supreme Court held that

governments may constitutionally ban corporate contributions. *See Thalheimer*,

---

[7] Montana Code Annotated § 13–35–227 provides:

(1) A corporation may not make a contribution or an expenditure in
connection with a candidate or a political committee that supports or
opposes a candidate or a political party.

(2) A person, candidate, or political committee may not accept or
receive a corporate contribution described in subsection (1).

(3) This section does not prohibit the establishment or administration
of a separate, segregated fund to be used for making political
contributions or expenditures if the fund consists only of voluntary
contributions solicited from an individual who is a shareholder,
employee, or member of the corporation.

(4) A person who violates this section is subject to the civil penalty
provisions of 13–37–128.

645 F.3d at 1124–25 (discussing *Beaumont*). The Court observed that such bans,

among other things, "'preven[t] corruption or the appearance of corruption.'"

*Beaumont*, 539 U.S. at 154 (quoting *FEC v. Natl. Conservative Political Action

Comm.*, 470 U.S. 480, 496–97 (1985)). Moreover, unlike bans on independent

expenditures, "bans on political contributions have been treated as merely

'marginal' speech restrictions subject to relatively complaisant review under the

First Amendment, because contributions lie closer to the edges than to the core of

political expression." *Id.* at 161 (quoting *FEC v. Colo. Republican Fed. Campaign

Comm.*, 533 U.S. 431, 440 (2001)).

The Ninth Circuit recently made clear that *Beaumont* is still good law in the

wake of the U.S. Supreme Court's decision in *Citizens United*, 130 S. Ct. 876,

where the Court held that bans on corporate independent expenditures are

unconstitutional. *See Thalheimer*, 645 F.3d at 1124–25. The *Citizens United* Court

expressly declined to revisit its precedent related to contributions and contribution

limits. 130 S. Ct. at 909. As a result, and relying on *Beaumont*, the Ninth Circuit

affirmed the district court's decision to not grant a preliminary injunction

enjoining San Diego's ban on contributions by "non-individuals," including those

made by corporations. *Thalheimer*, 645 F.3d at 1124–25. The court recognized

that such bans are constitutional. *Id.*

The plaintiffs argue that *Citizens United* somehow abrogated *Beaumont* and

27

that *Beaumont* does not stand for the proposition that bans on corporate

contributions are constitutional. The Ninth Circuit's decision in *Thalheimer*,

though, shows the opposite is true. Yet the plaintiffs fail entirely to acknowledge

the effect of *Thalheimer*, despite relying on it for more favorable propositions.

Since the U.S. Supreme Court and the Ninth Circuit (after *Citizens United*)

have held that bans on corporate contributions are constitutional, the plaintiffs

argument necessarily fails, and the Court does not enjoin the enforcement the

corporate-contribution provision in Montana Code Annotated § 13–35–227.

## B.     Corporate independent expenditures

Montana Code Annotated § 13–35–227 prevents corporations from making

"expenditure[s] in connection with a candidate or a political committee that

supports or opposes a candidate or a political party." In *Citizens United*, the U.S.

Supreme Court held, in sweeping language, that such bans on corporate

independent expenditures are facially unconstitutional under the First Amendment.

*See* 130 S. Ct. at 913. Despite the Supreme Court's decision in *Citizens United*, the

Montana Supreme Court upheld Montana's ban on corporate independent

expenditures. *See W. Tradition Partnership*, 2012 MT 328. American Tradition

Partnership, a plaintiff both here and in *Western Tradition Partnership*, then

applied to the U.S. Supreme Court for a stay of the Montana Supreme Court's

decision, pending a petition for writ of certiorari. *See Am. Tradition Partn., Inc.*,

Cause No. 11A762. The U.S. Supreme Court granted that application.

The U.S. Supreme Court's order, with which I agree, effectively prevents the State of Montana from enforcing Section 13–35–227. [8] The plaintiffs' motion here to preliminarily enjoin that statute is therefore at this stage of the proceeding moot. This Court should not duplicate or interfere with the U.S. Supreme Court's order by also preliminarily enjoining the enforcement of Section 13–35–227.

## CONCLUSION

The Court grants the motion in part and denies it in part. The Court grants the motion as to the voter-reporting requirement, Mont. Code Ann. § 13–35–225(3)(a), and the political-civil-libel provision, Mont. Code Ann. § 13–37–131. Both of those statutes are unconstitutionally vague.

The Court, though, denies the motion as it relates to the contribution limits for individuals, political committees, and political parties. *See* Mont. Code Ann. § 13–37–216(1), (3), (5). Current Ninth Circuit and U.S. Supreme Court precedent counsels against an injunction at this point. As the litigation in this matter continues, though, the plaintiffs might come forward with facts that show the contribution limits for individuals, political committees, and political parties are

---

[8] When a corporation gives money to a political committee that then makes an independent expenditure of that money to support or oppose a candidate, the corporation has made an independent expenditure, as contemplated in *Western Tradition Partnership* and Section 13-35-277.

inadequate.

Finally, the Court denies the motion as it relates to the corporate contribution and independent expenditure provisions. The U.S. Supreme Court has held that governments may ban direct corporate contributions to candidates. *See Thalheimer*, 645 F.3d at 1124–25 (discussing *Beaumont*, 539 U.S. 146). As for independent expenditures, that question is moot at this point in light of the U.S. Supreme Court's order in *Am. Tradition Partnership*, Cause No. 11A762.

Accordingly, IT IS HEREBY ORDERED that the plaintiffs' motion for a preliminary injunction (dkt # 9) is GRANTED IN PART and DENIED IN PART.

The Court GRANTS the motion as to Montana Code Annotated §§ 13–37–131, 13–35–225(3)(a). The defendants are ENJOINED from enforcing those statutory provisions pending further order from the court.

The Court DENIES the motion as to Montana Code Annotated § 13–37–216(1), (3), (5) and the corporate-contribution provision in Montana Code Annotated § 13–35–227.

The Court DENIES as moot the motion as to the corporate-independent-expenditure provision in Montana Code Annotated § 13–35–227.

Dated this 24th day of February 2012. *11: 45 AM o'clock*

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE