## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## HELENA DIVISION

| | |
|---|---|
| DOUG LAIR, STEVE DOGIAKOS, AMERICAN TRADITION PARTNERSHIP, AMERICAN TRADITION PARTNERSHIP PAC, MONTANA RIGHT TO LIFE ASSOCIATION PAC, SWEET GRASS COUNCIL FOR COMMUNITY INTEGRITY, LAKE COUNTY REPUBLICAN CENTRAL COMMITTEE, BEAVERHEAD COUNTY REPUBLICAN CENTRAL COMMITTEE, JAKE OIL LLC, JL OIL LLC, CHAMPION PAINTING INC, and JOHN MILANOVICH, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CV 12-12-H-CCL |
| Plaintiffs, ) ) ) | ORDER and PERMANENT INJUNCTION |
| vs. ) ) ) | |
| JAMES MURRY, in his official capacity as Commissioner of Political Practices; STEVE BULLOCK, in his official capacity as Attorney General of the State of Montana; and LEO GALLAGHER, in his official capacity as Lewis and Clark County Attorney; ) ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

1

The plaintiffs filed this lawsuit, challenging several of Montana's campaign finance and election laws. The plaintiffs also moved for a preliminary injunction, which the Court granted in part and denied in part. The parties then agreed that some of the plaintiffs' claims could be resolved by summary judgment and some would require further factual development and a bench trial. Both parties moved for summary judgment in light of this stipulation.

The Court held a hearing on the motions for summary judgment on May 12, 2012. Noel Johnson and John Bloomquist appeared for the plaintiffs. Michael Black and Andrew Huff appeared for the defendants. Having heard the arguments and examined the briefs, the Court grants the motions in part and denies them in part. In particular, the Court permanently enjoins Montana's vote-reporting requirement, political-civil libel statute, and ban on corporate contributions to political committees that the committees use for independent expenditures. The Court, however, concludes that Montana's ban on direct and indirect corporate contributions to candidates and political parties is constitutional.

This order and permanent injunction is the final judgment on these matters. The balance of the plaintiffs' claims shall be resolved by bench trial.

## BACKGROUND

The plaintiffs are individuals, corporations, political committees,

2

associations, and political parties that have expressed a desire to take actions that

would violate several of Montana's campaign finance and election laws:

- Montana Code Annotated § 13–35–225(3)(a), which requires
  authors of political election materials to disclose another
  candidate's voting record;

- Montana Code Annotated § 13–37–131, which makes it
  unlawful for a person to misrepresent a candidate's public
  voting record or any other matter relevant to the issues of the
  campaign with knowledge that the assertion is false or with a
  reckless disregard of whether it is false;

- Montana Code Annotated § 13–37–216(1), (5), which limits
  contributions that individuals and political committees may
  make to candidates;

- Montana Code Annotated § 13–37–216(3), (5), which imposes
  an aggregate contribution limit on all political parties; and

- Montana Code Annotated § 13–35–227, which prevents corporations
  from making contributions or expenditures in connection with a
  candidate or a political committee that supports or opposes a
  candidate or political party.

The plaintiffs argue that each of these statutory provisions violates the First

Amendment of the United States Constitution.

As the Court previously concluded, the plaintiffs have standing to pursue

their claims. (*See* doc. 66 at 6–7); *Wong v. Bush*, 542 F.3d 732, 736 (2008)

(holding that, in the first amendment context, "'[I]t is sufficient for standing

purposes that the plaintiff intends to engage in a course of conduct arguably

3

affected with a constitutional interest and there is a credible threat that the challenged provision will be invoked against the plaintiff.'" (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154–55 (9th Cir. 2000)).

On February 24, 2012, the Court issued a preliminary inunction enjoining the enforcement of the vote-reporting requirement (Section 13–35–225(3)(a)) and the political civil libel statute (Section § 13–37–131). The Court, however, did not enjoin enforcement of the contribution limits in Section 13–37–216(1), (3), (5) or the ban on corporate contributions and expenditures in Section 13–37–227.

In a scheduling order issued after the preliminary injunction order, and by agreement of the parties, the Court ordered that it will hold a bench trial to adjudicate the plaintiffs' claims regarding the contribution limits in Section 13–37–216(1), (3), (5). That trial is scheduled for September 12, 2012. The Court and the parties agreed that all other matters can be adjudicated by summary judgment.

Both parties then moved for summary judgment, presenting four questions:

1.   Is the vote-reporting requirement (Section 13–35–225(3)(a)) constitutional?

2.   Is the political-civil libel statute (Section § 13–37–131) constitutional?

3.   May governments ban direct or indirect corporate contributions

4

to candidates and political parties (Section 13–37–227)?

4.    May governments prevent corporations from making
      contributions to political committees that use the contributions
      for independent expenditures in support of a candidate or
      political party (Section 13–37–227)?

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if there are no genuine issues of

material fact and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Here,

there are no factual disputes precluding summary judgment. The only questions

before the Court are questions of law, making summary judgment the appropriate

vehicle for resolving these issues. *See IDK, Inc. v. Clark Co.*, 836 F.2d 1185, 1189

(9th Cir.1988).

## ANALYSIS

The Court grants summary judgment in favor of the plaintiffs in three

respects: The vote-reporting requirement, the political civil libel statute, and the

prohibition of corporate contributions to political committees that the committees

then use for independent expenditures are all unconstitutional under the First

Amendment. The Court, however, grants summary judgment in favor of the

defendants on one of the plaintiffs' claims: Governments may constitutionally

5

prohibit corporations from making direct or indirect contributions to candidates and political parties.

## I. Section 13–35–225(3)(a): vote-reporting requirement

The plaintiffs move for summary judgment on their claim that the vote-reporting requirement in Section 13–35–225(3)(a) is unconstitutional under the First Amendment. They argue the statute is unconstitutionally vague, overbroad, and fails strict scrutiny review. The Court agrees that the statute is unconstitutionally vague and therefore grants the plaintiffs' motion as to this claim.

The vote-reporting requirement in Section 13–35–225(3)(a) provides:

Printed election material described in subsection (1) that includes information about another candidate's voting record must include:

(i) a reference to the particular vote or votes upon which the information is based;

(ii) a disclosure of contrasting votes known to have been made by the candidate on the same issue if closely related in time; and

(iii) a statement, signed as provided in subsection (3)(b), that to the best of the signer's knowledge, the statements made about the other candidate's voting record are accurate and true.

The Court concludes that the statute is unconstitutionally vague for the same reasons that it enjoined the statute in its preliminary injunction order. None of the

6

parties provided any reasons in their summary judgment briefing for why that

initial conclusion should be disturbed. For the sake of convenience, the Court

presents below its discussion from the preliminary injunction order.

A statute is unconstitutionally vague if it "fails to clearly mark the boundary

between permissible and impermissible speech . . . ." *Buckley v. Valeo*, 424 U.S. 1,

41 (1976).

> Statutes that are insufficiently clear are void for three reasons: "(1) to
> avoid punishing people for behavior that they could not have known was
> illegal; (2) to avoid subjective enforcement of the laws based on
> 'arbitrary and discriminatory enforcement' by government officers; and
> (3) to avoid any chilling effect on the exercise of First Amendment
> freedoms."

*Humanitarian Law Project v. U.S. Treas. Dept.*, 578 F.3d 1133, 1146 (9th Cir.

2009) (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998)).

Stated differently, "A statute must be sufficiently clear so as to allow persons of

'ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Foti*,

146 F.3d at 638 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972));

*see also Humanitarian Law Project*, 578 F.3d at 1146.

Here, the problematic portion of Section 13–35–225(3)(a) is subsection (ii).[1]

Under that subsection, when printed election material includes information about a

---

[1] This is not to say that other subsections are inviolate under theories other
than vagueness. As explained below, the Court need not address other subsections
or other theories.

7

candidate's voting record, the material must also include "a disclosure of contrasting votes known to have been made by the candidate on the same issue if closely related in time." Mont. Code Ann. § 13–35–225(3)(a)(ii).

As the plaintiffs discuss, the phrase "closely related in time" is not defined anywhere in Montana's statutes or regulations, and a candidate could not possibly know to what "closely related in time" refers. The defendants argue that "closely related in time" simply refers to votes that occur in the same legislative session as the votes discussed in the printed election material. That is one possibility, but are there others?

Could the phrase "closely related in time" also include the previous legislative session? Yes, possibly. A candidate's vote on a particular tax issue in 2009 could be construed as "closely related in time" to a vote on the same tax issue in 2011 (the following legislative session). But someone else might construe it differently to mean, as the defendants suggest, the same legislative session. And that is the point—the statute utterly "fails to clearly mark the boundary between permissible and impermissible speech." *Buckley*, 424 U.S. at 41. As such, it is unconstitutionally vague. *Id.*

Similarly, the phrase "the same issue" is unconstitutionally vague. Suppose, for example, that the Montana Legislature is addressing the question of campaign financing and that a state senator votes to raise the contribution limit for

8

individuals and political committees in gubernatorial races from $500 to $1,000.
But suppose also that the same senator votes to lower that limit for political parties
from $18,000 to $13,000. Do the two votes involve "the same issue" under Section
13–35–225(3)(a)(ii)? Maybe. Broadly defined, both votes concern campaign
financing for gubernatorial races. But, narrowly defined, they are different—one
concerns individuals and political committees and the other concerns political
parties. The question of sameness, then is a question of scale. At one level the
issues are the same, but, at another, they are not. As such, "persons of ordinary
intelligence" do not have "a reasonable opportunity to know what is prohibited"
by the phrase "the same issue." *See Foti*, 146 F.3d at 638. The phrase "the same
issue" is therefore unconstitutionally vague. *Id.*

At the summary judgment hearing, the defendants conceded that the
unconstitutional portions of Section 13–35–225(3)(a) cannot be severed. The
Court agrees. For the reasons discussed in *Randall v. Sorrell*, 548 U.S. 230, 262
(2006), the Court does not sever the unconstitutional portion of the statute.
Severing the provision would leave gaps in the statute and would require the Court
to predict or foresee how the legislature might respond to the unconstitutional
portions of the statute. *Id.* By not severing the provision, the legislature will be
"free to rewrite [the statute] in light of the constitutional difficulties" that the
Court has found. *Id.*

Since the Court grants summary judgment in favor of the plaintiffs on account of the statute's unconstitutional vagueness, the Court need not address the remaining bases upon which the statute might be unconstitutional. *See Camreta v. Greene*, 131 S. Ct. 2020, 2031 (2011) (observing that courts should "avoid reaching constitutional questions in advance of the necessity of deciding them." (citations and internal quotation marks omitted)).

## II.    Section 13–37–131: political civil libel

The plaintiffs also move for summary judgment on their claim that the political civil libel statute—Section 13–37–131—is unconstitutional under the First Amendment. The Court agrees that the statute is unconstitutionally vague and grants summary judgment in favor of the plaintiffs as to this claim.

The political civil libel statute makes it unlawful for a person to "misrepresent" a candidate's "public voting record or any other matter that is relevant to the issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false."[2] Like the vote-

---

[2] Section 13–37–131 provides:

> (1) It is unlawful for a person to misrepresent a candidate's public voting record or any other matter that is relevant to the issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false.

> (2) It is unlawful for a person to misrepresent to a candidate another candidate's public voting record or any other matter that is relevant to

10

reporting requirement above, the Court concludes the statute is unconstitutionally vague for the same reasons discussed in its preliminary injunction order.

The problematic phrase is: "or any other matter relevant to the issues of the campaign."[3] There is simply no way for a person or an organization to know with certainty whether an issue is "relevant" to a candidate's campaign. The plaintiffs poignantly ask whether this statute is "restricted to statements about the candidates' prior and current government service? Or does it also include statements about such things as candidates' academic backgrounds? Their spouses? Their current or past employment? Their spending habits?"

The plaintiffs' questions are well taken. A person of "ordinary intelligence"

_____

the issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false.

(3) For the purposes of this section, the public voting record of a candidate who was previously a member of the legislature includes a vote of that candidate recorded in committee minutes or in journals of the senate or the house of representatives. Failure of a person to verify a public voting record is evidence of the person's reckless disregard if the statement made by the person or the information provided to the candidate is false.

(4) A person violating subsection (1) or (2) is liable in a civil action brought by the commissioner or county attorney pursuant to 13–37–124 for an amount up to $1,000. An action pursuant to this section is subject to the provisions of 13–37–129 and 13–37–130.

[3] Again, this is not to say that other portions of the statute are inviolate under theories other than vagueness. As explained below, the Court need not address other subsections or other theories.

11

would not have "a reasonable opportunity to know what is prohibited" under the statute. *Foti*, 146 F.3d at 638. The defendants counter that the statute is not vague because the speaker's speech determines the relevancy. In other words, if a person says something about a candidate, then that makes the speech "relevant to the issues of the campaign." Not so. If the defendants were correct, then the statute would be unconstitutionally overbroad. Suppose, for example, that Candidate A says that Candidate B has blue eyes when, in fact, she has brown eyes. Is that statement "relevant to the issues of the campaign"? Under the defendants' theory, yes. But, as we are often reminded during elections, not everything that is said during a campaign is truly "relevant to the issues of the campaign." Moreover, relevancy is in the eye of the beholder—what is relevant to one voter might not be relevant to another.

Since there is no way to know what constitutes a matter "relevant to the issues of the campaign," Section 13–37–131 "fails to clearly mark the boundary between permissible and impermissible speech . . . ." *Buckley*, 424 U.S. at 41. As such, it is unconstitutionally vague. *Id.*

The plaintiffs argue that, unlike the vague portion of the vote-reporting requirement, the vague portion of the political civil libel statute can be severed. The Court disagrees. Severing the unconstitutional portions of the statute would require the Court to pluck words from the statute that the State Legislature

12

apparently concluded were essential to the statute's meaning. Of some note, the

statute does not contain a severability clause. *See Bd. of Natural Resources of St.*

*of Wash. v. Brown*, 992 F.2d 937, 948 (9th Cir. 1993) (noting that the absence of a

severability clause "'does suggest an intent to have all components operate

together or not at all.'" (quoting *In re Reyes*, 910 F.2d 611, 613 (9th Cir. 1990)).

For the reasons given in *Randall*, the Court does not sever the unconstitutional

portion of the statute. Severing the provision would leave gaps in the statute and

would require the Court to predict or foresee how the legislature might respond to

the unconstitutional portions of the statute. *Id.* By not severing the provision, the

legislature will be "free to rewrite [the statute] in light of the constitutional

difficulties" that the Court has found. *Id.*

Since the Court grants summary judgment in favor of the plaintiffs on

account of the statute's unconstitutional vagueness, the Court need not address the

remaining bases upon which the statute might be unconstitutional. *See Camreta*,

131 S. Ct. at 2031 (observing that courts should "avoid reaching constitutional

questions in advance of the necessity of deciding them." (citations and internal

quotation marks omitted)).

III.   **Section 13–35–227: corporate contributions to political committees for independent expenditures**

Montana Code Annotated § 13–35–227 prevents corporations from making

13

"expenditure[s] in connection with a candidate or a political committee that

supports or opposes a candidate or a political party."[4] This includes money that a

corporation gives to a political committee that the committee then uses for

independent expenditures. The plaintiffs argue that this ban violates the First

Amendment, and the Court agrees.

> Montana's Administrative Rules defines an "independent expenditure" as:
>
> an expenditure for communications expressly advocating the success or
> defeat of a candidate or ballot issue which is not made with the
> cooperation or prior consent of or in consultation with, or at the request
> or suggestion of, a candidate or political committee or an agent of a
> candidate or political committee.

Admin. R. Mont. 44.10.323(3); *see also Long Beach Area Chamber of Commerce*

---

[4] Section 13–35–227 provides:

(1) A corporation may not make a contribution or an expenditure in
connection with a candidate or a political committee that supports or
opposes a candidate or a political party.

(2) A person, candidate, or political committee may not accept or receive
a corporate contribution described in subsection (1).

(3) This section does not prohibit the establishment or administration of
a separate, segregated fund to be used for making political contributions
or expenditures if the fund consists only of voluntary contributions
solicited from an individual who is a shareholder, employee, or member
of the corporation.

(4) A person who violates this section is subject to the civil penalty
provisions of 13-37-128.

*v. City of Long Beach*, 603 F.3d 684, 695 (9th Cir. 2010) ("'By definition, an independent expenditure is political speech presented to the electorate that is not coordinated with a candidate.'" (quoting *Citizens United*, 130 S. Ct. at 910)).

Independent expenditures stand in contrast to "coordinated expenditures," which the Administrative Rules define as "expenditure[s] made in cooperation with, consultation with, at the request or suggestion of, or the prior consent of a candidate or political committee or an agent of a candidate or political committee." Admin. R. Mont. 44.10.323(4). Coordinated expenditures are functionally equivalent to contributions. *See id*; *FEC v. Colo. Republican Fed. Campaign Comm. (Colorado II)*, 533 U.S. 431, 443 (2001) (citing *Buckley*, 424 U.S. at 46–47).

In *Citizens United*, the U.S. Supreme Court held, in sweeping language, that governments cannot ban corporate independent expenditures. Despite that decision, the Montana Supreme Court upheld Montana's ban on corporate independent expenditures in *Western Tradition Partnership, Inc. v. Attorney General of the State of Montana*, 271 P.3d 1 (Mont. 2011). American Tradition Partnership,[5] the lead plaintiff in that case, applied to the U.S. Supreme Court for a stay of the Montana Supreme Court's decision, pending its petition for a writ of

---

[5] Western Tradition Partnership changed its name to American Tradition Partnership after it filed its lawsuit in Montana but before it filed its petition for a writ of certiorari with the U.S. Supreme Court.

certiorari. *See Am. Tradition Partn., Inc.*, No. 11-1179. The U.S. Supreme Court granted the application, ordering the stay, and American Tradition Partnership filed its petition for a writ of certiorari on March 26, 2012. That petition remains pending as of the date of this order.

The question in this case is slightly different than the question presented in *Citizens United* and *Western Tradition Partnership* (as well as the certiorari petition in *American Tradition Partnership*). In those cases, the question was and is whether governments may prohibit corporations from making independent expenditures. Here, though, the question is whether governments may prevent corporations from giving money to political committees so that the committees can use that money for independent expenditures. As explained below, the questions are inextricably linked, but they are nonetheless distinct.

This Court initially concluded in its preliminary injunction order that the U.S. Supreme Court's stay in *American Tradition Partnership* makes the plaintiff's claim moot because the stay prevents the State of Montana from enforcing Section 13–35–227's ban on corporate independent expenditures. That statement is correct, to an extent. The stay does, indeed, prevent the State from enforcing Section 13–35–227's ban on corporate independent expenditures. But the stay does not reach the corporate remittance at issue here because the remittance is not an independent expenditure; rather, it must be construed as a

16

contribution.

When a corporation gives money to a political committee for the purpose of making an independent expenditure, the corporation must necessarily consult, cooperate, and coordinate with the committee when making that transfer. *See* Admin. R. Mont. 44.10.323(3), (4). Moreover, the transfer requires the political committee's "prior consent" because the political committee must accept the remittance in order to use it for independent expenditures. *Id.* Rather than an independent expenditure, then, the remittance is a coordinated expenditure and functionally equivalent to a contribution. *Id.*; *see also Thalheimer*, 645 F.3d at 1120–21 (observing that when a corporation gives money to a political committee for use as an independent expenditure, the corporation has made a contribution); *Long Beach*, 603 F.3d at 696–99 (same); *SpeechNow.org v. FEC*, 599 F.3d 686, 694–95 (D.C. Cir. 2010) (same).

Even though this type of corporate contribution is not an independent expenditure, its legality is fundamentally dependent on the legality of independent expenditures. *See Thalheimer*, 645 F.3d at 1117–21; *Long Beach*, 603 F.3d at 691–99. In both *Thalheimer* and *Long Beach*, the Ninth Circuit invalidated restrictions on contributions to political committees that the committees use for independent expenditures. It did so precisely and solely because the Supreme Court, in *Citizens United*, held that governments cannot restrict or ban corporate

independent expenditures. *Thalheimer*, 645 F.3d at 1119–21; *Long Beach*, 603 F.3d at 698–99; *see also Yamada v. Weaver*, 2012 WL 983559 at *14–*15 (D. Hawaii March 21, 2012) (applying *Thalheimer* and *Long Beach* and invalidating a statute that placed limitations on contributions to organizations that engage in only independent expenditures). The  D.C. Circuit similarly held that, in light of *Citizens United*, "[I]ndependent expenditures do not corrupt or create the appearance of *quid pro quo* corruption," and, thus, "contributions to groups that make only independent expenditures also cannot corrupt or create the appearance of corruption." *SpeechNow.org*, 599 F.3d at 694–95.

In summary, since, under *Citizens United*, governments cannot restrict independent expenditures made by organizations, governments cannot ban corporate contributions to political committees that the committees then use for independent expenditures. Those contributions "can only lead to independent expenditures," which, under *Citizens United*, governments cannot restrict. *Yamada*, 2012 WL 983559 at *15.

Given the inextricable link between *Citizens United* and the question before this Court, the defendants argue that the Court should stay its resolution of this question, pending the U.S. Supreme Court's decision in *American Tradition Partnership*, where the U.S. Supreme Court could revisit *Citizens United*. Courts have the inherent power to stay proceedings pending a decision by the U.S.

Supreme Court in another case. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55

(1936). In doing so, courts must be mindful of four factors:

> (1) stays should not be indefinite in nature and should not be granted unless it appears likely the other proceeding will be concluded within a reasonable time;
>
> (2) courts more appropriately enter stay orders where a party seeks only damages, does not allege continuing harm, and does not seek injunctive or declaratory relief since a stay would result only in delay in monetary recovery;
>
> (3) stays may be appropriate if resolution of issues in the other proceeding would assist in resolving the proceeding sought to be stayed; and
>
> (4) stays may be appropriate for courts' docket efficiency and fairness to the parties pending resolution of independent proceedings that bear upon the case.

*McCollough v. Minn. Laws. Mut. Ins. Co.*, 2010 WL 441533 at *4 (collecting

Ninth Circuit cases).

   The balance of these four factors weighs heavily against granting a stay.

First, any stay would necessarily be indefinite because the Court cannot predict

when the U.S. Supreme Court will resolve *American Tradition Partnership*.

Second, this is not a claim for damages. The plaintiffs allege a continuing harm

and seek injunctive relief. Third, a stay would not be fair to the plaintiffs because

it would leave this question unresolved on the eve of the upcoming election.

   The U.S. Supreme Court's decision in *American Tradition Partnership*

might very well assist the Court in resolving the plaintiffs' claims here. Then

again, it might not. Regardless, the balance of factors weighs against granting a

stay, particularly in light of the clear direction from *Thalheimer* and *Long Beach*.

Under those cases, governments cannot prohibit a corporation from making a

contribution to a political committee that the committee then uses for independent

expenditures.

The Court therefore grants summary judgment in favor of the plaintiffs on

this claim. Section 13–35–227(1) is unconstitutional to the extent that it prohibits

corporations from making contributions to political committees that use those

contributions for independent expenditures. As a corollary, Section 13–35–227(2)

is also unconstitutional to the extent that it prevents political committees from

receiving those contributions.

## IV.   Section 13–35–227: direct and indirect corporate contributions to candidates or political parties

Finally, the defendants move for summary judgment on the plaintiffs' claim

that Section 13–35–227's ban on corporate contributions to candidates or political

parties is unconstitutional. The Court grants summary judgment in favor of the

defendants on this issue.

Montana's ban on corporate contributions to candidates and political parties

dates back to the era of the "Copper Kings"—when the State's political economy

was significantly driven by corporate power in mining and other industries. *See W.*

*Tradition Partn.*, 271 P.3d at 230–35. As the Montana Supreme Court explained,

20

these corporate interests drove Montana politics. *Id.* W.A. Clark, for example, a product of the Butte mining boom, won his U.S. Senate seat through bribery. *Id.* at 231. And, in the interest of satisfying the Anaconda Company (a mining company), the Montana Legislature passed a law that allowed the Company to avoid having to litigate cases in front of Butte judges (who themselves had been bribed by the Company's opponent). *Id.* at 231. Other examples of corruption during that time period abound. *See e.g. id.* at 230–35.

The landscape, though, has undeniably changed markedly over the intervening decades.

Then, comparatively, corporations were few and large. Today, in Montana, they are many and smaller. They may include for example our doctor, lawyer, dentist, architect, engineer, accountant, other professionals, farms, ranches, agribusinesses, restaurants, plumbers, etc. Many family farms and businesses are incorporated, and the corporation is no stranger to main street Montana.

Whether for liability protection, taxation benefits, or other reasons of convenience, the typical corporation in Montana today is more likely to be a small closely held family company than a large industrial corporation.

This transition focuses on the fact that the corporation itself is not the villain. Rather, the concern is any entity, amassing large aggregations of wealth combined with unscrupulous spending and corrupt control.

This realization raises the question of whether the typical small corporation—i.e. family or professional business, farm etc., for example—should be permitted to use their moneys to support or oppose candidates or political parties they believe support or threaten their well-being, as the case may be.

In Montana, corporations have the first amendment right to spend their money and participate in ballot elections. *See Mont. Chamber of Commerce v. Argenbright*, 226 F.3d 1049 (9th Cir. 2000). Not so as to contributions to candidates and political parties.

Because of controlling law supporting the constitutionality of this ban the question becomes one of policy for the Legislature rather than this Court.

The U.S. Supreme Court held in *FEC v. Beaumont*, 539 U.S. 146 (2003), that a state may generally ban direct corporate contributions. *See also Thalheimer*, 645 F.3d at 1124–25 (discussing *Beaumont*). Such bans, among other things, "'preven[t] corruption or the appearance of corruption.'" *Beaumont*, 539 U.S. at 154 (quoting *FEC v. Natl. Conservative Political Action Comm.*, 470 U.S. 480, 496–97 (1985)). Unlike bans on independent expenditures, "[B]ans on political contributions have been treated as merely 'marginal' speech restrictions subject to relatively complaisant review under the First Amendment, because contributions lie closer to the edges than to the core of political expression." *Id.* at 161 (quoting *Colorado II*, 533 U.S. at 440).

22

The Ninth Circuit has made clear that *Beaumont* is still good law in the wake of the U.S. Supreme Court's decision in *Citizens United*. *See Thalheimer*, 645 F.3d at 1124–25. Here, then, Section 13–35–227's ban on direct corporate contributions to candidates and political parties is constitutional under *Thalheimer* and *Beaumont*.

Direct contributions aside, a state may also prevent a corporation from making an indirect contribution to a candidate or political party through the use of a conduit—e.g., contributing money to a political committee that then contributes that money to a candidate or political party. *See Beaumont*, 539 U.S. at 160; *Buckley*, 424 U.S. at 23 n.24 (observing that "funds provided to a candidate or political party . . . either directly or indirectly through an intermediary constitute a contribution" to that candidate or political party). Allowing corporations to contribute money to political committees that, in turn, contribute the money directly to candidates or political parties would be an express circumvention of a state's ban on corporate contributions to candidates or political parties. Even after *Citizens United*, states may avail their anti-circumvention interest by restricting contributions. *See Thalheimer*, 645 F.3d at 1124–25, ("[T]here is nothing in the explicit holdings or broad reasoning of *Citizens United* that invalidates the anti-circumvention interest in the context of limitations on direct candidate contributions.").

23

In an analogous situation, the Southern District of California, on remand

from the Ninth Circuit in *Thalheimer*, explained:

> [T]o prevent circumvention of contribution limits by individual donors,
> when a committee that otherwise makes independent expenditures
> *decides to make contributions directly to a candidate or a party,* the
> [government] may enforce the . . . contribution limit. *See [Emily's List
> v. FEC*, 581 F.3d 1, 11–12 (D.C. Cir. 2009)]. Stated another way: an
> independent expenditure committee that makes expenditures to support
> a candidate "does not suddenly forfeit its First Amendment rights when
> it decides also to make direct contributions to parties or candidates.
> Rather, it simply must ensure, to avoid circumvention of individual
> contribution limits by its donors, that its contributions to parties or
> candidates come from a hard-money account" subject to the source and
> amount limitations in [the statute]. *See id.*"

*Thalheimer v. City of San Diego*, 2012 WL 177414 at *12 (S.D. Cal. Jan. 2012).

The same reasoning applies here. While Montana may not ban corporate

contributions to political committees that are used for independent expenditures, it

may ban—and has banned through Section 13–35–227—corporate contributions

to political committees that are used for direct contributions to candidates or

political parties. As the Southern District of California explained, this distinction

does not mean that corporations or political committees in Montana have forfeited

their first amendment rights. Instead, they must simply ensure that independent

expenditures and contributions are accounted for separately.

## CONCLUSION

The Court grants summary judgment in favor of the plaintiffs on three of

24

their claims. Montana's vote-reporting requirement, the political civil libel statute, and the prohibition of corporate contributions to political committees that the committees then use for independent expenditures are all unconstitutional under the First Amendment. The Court, however, grants summary judgment in favor of the defendants on one of the plaintiffs' claims—Montana may constitutionally prohibit corporations from making direct or indirect contributions to candidates and political parties.

IT IS ORDERED that the plaintiffs' motion for partial summary judgment (doc. 75) and the defendants' motion for partial summary judgment (doc. 78) are GRANTED IN PART and DENIED IN PART.

The Court GRANTS the plaintiffs' motion for summary judgment in the following respects:

1.  Montana Code Annotated § 13–35–225(3)(a) is unconstitutionally vague.

2.  Montana Code Annotated § 13–37–131 is unconstitutionally vague.

3.  Montana Code Annotated § 13–35–227 is unconstitutional to the extent that it prohibits a corporation from making a contribution to a political committee that the committee then uses for independent expenditures in support of or opposition to a candidate or a political party.

The defendants are PERMANENTLY ENJOINED from enforcing each of these three provisions. The plaintiffs' motion is DENIED in all other respects.

25

The Court GRANTS the defendants' motion for summary judgment in the following respect: Montana Code Annotated § 13–35–227 is constitutional to the extent that it prohibits a corporation from making direct or indirect contributions to candidates or political parties. The defendants' motion is DENIED in all other respects.

IT IS FURTHER ORDERED that the February 24, 2012 preliminary injunction (doc. 66) is DISSOLVED.

IT IS FURTHER ORDERED that this order and permanent injunction is the final judgment as to the issues addressed herein. Let this judgment enter. The balance of the plaintiffs' claims shall be resolved by bench trial.

Dated this /6 day of May 2012. 0830 AM.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE

26