IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

FILED
JUN 29 2012
PATRICK E. DUFFY, CLERK
By_____
DEPUTY CLERK, HELENA

| | |
|---|---|
| DOUG LAIR, STEVE DOGIAKOS, AMERICAN TRADITION PARTNERSHIP, AMERICAN TRADITION PARTNERSHIP PAC, MONTANA RIGHT TO LIFE ASSOCIATION PAC, SWEET GRASS COUNCIL FOR COMMUNITY INTEGRITY, LAKE COUNTY REPUBLICAN CENTRAL COMMITTEE, BEAVERHEAD COUNTY REPUBLICAN CENTRAL COMMITTEE, JAKE OIL LLC, JL OIL LLC, CHAMPION PAINTING INC, and JOHN MILANOVICH, <br><br> Plaintiffs, <br><br> vs. <br><br> JAMES MURRY, in his official capacity as Commissioner of Political Practices; STEVE BULLOCK, in his official capacity as Attorney General of the State of Montana; and LEO GALLAGHER, in his official capacity as Lewis and Clark County Attorney; <br><br> Defendants. | CV 12-12-H-CCL <br><br><br><br><br> ORDER |

On June 20, 2012, the defendants—without leave of the Court—moved for

1

summary judgment on the plaintiffs' claims concerning Montana's contribution limits for elections. *See* Mont. Code Ann. § 13–37–216(1), (3), (5). Defendants' filing was accompanied by 217 exhibits, all of this while plaintiffs were proceeding with ongoing discovery for trial. The plaintiffs argue that these contribution limits are unconstitutional under the First Amendment. In this new motion for summary judgment, the defendants ask the Court to summarily rule that the limits are, instead, constitutional. The defendants' motion is improper and untimely.

Here, the Court—by agreement and stipulation of the parties—ordered that the plaintiffs' claims regarding Montana's contribution limits were inherently factual questions not subject to summary judgment. The Court and the parties therefore concluded that those claims could be resolved only by a bench trial. The Court and the parties have since relied on that conclusion as they have proceeded in this case.

On February 24, 2012, the Court granted in part and denied in part the plaintiffs' application for a preliminary injunction. After issuing that order, the Court held a status conference on March 9, 2012, to set a schedule for the remaining proceedings. The transcript of that hearing is attached as Exhibit A. The plaintiffs were represented by James Brown, and the defendants were represented

by Michael Black and Andrew Huff.

Two things were made abundantly clear at the status hearing: (1) The claims regarding contribution limits would not be resolved by summary judgment and would instead be resolved only by a bench trial and (2) all other claims were subject to summary adjudication. The Court and the parties discussed these points at length throughout the hearing.

The Court first asked:

> Now, recognizing that the rules would provide greater time latitude for the parties, we are at this point and query: To what extent can the issues be streamlined; can the case be put in a position by both sides and by the court for resolution, comfortable period of time prior to the primary election?

(Doc. 107 at 4). The parties both agreed that all of the issues except those related to contribution limits would be resolved by summary judgment. By doing so and expediting the trial for the contribution-limit claims, the Court and the parties agreed that the claims related to the contribution limits could be resolved prior to when the 2013 Montana Legislature convenes and that all other claims could be resolved prior to the 2012 primary election.

Initially, the Court suggested an early schedule that would have allowed all issues—including those related to contribution limits—to be resolved before the primary election. (Doc. 107 at 4.) The plaintiffs, however, suggested that they

3

would not be able to marshal their discovery by that time. (Doc. 107 at 5.) They agreed with the defendants that they would be better suited with a trial on the contribution-limits claims in late summer or early fall, in advance of the 2013 Montana Legislature convening. (Doc. 107 at 5–6, 18–19.)

Based on these representations, the Court reiterated its plan to the parties—that is to have a trial for the contribution-limits claims and to resolve the remaining claims by summary judgment. When the Court asked the parties about this plan, they stated:

> MR. BROWN: I believe Your Honor is absolutely correct. I believe that all counts of the plaintiffs' complaint, except for the contribution limits, can probably be resolved as a matter of law on the pleadings at summary judgment, but that for trial, it will be necessary to hold a trial on the contribution limits and their constitutionality.
>
> . . .
>
> MR. BLACK: I think it is likely that a lot of the legal issues, other than the contribution limits, will be susceptible to summary judgment. But I do not believe that the contributions limits issues will be.

(Doc. 107 at 7.) The parties then reiterated this sentiment several times throughout the hearing:

> MR. BLACK: . . . [C]ertainly, the contribution limits, that's going to be a fact-intensive inquiry that will need a fully developed record. And I just can't see that being subject to summary adjudication.

(Doc. 107 at 8.)

> MR. BROWN: . . . [T]he only questions of fact left are as to the constitutionality of Montana's contribution limits.

(Doc. 107 at 10.)

The Court took the parties at their word. Based on their representations, the Court ordered that contribution-limits claims would not be resolved by summary judgment and would, instead, be resolved only through a bench trial:

> THE COURT: All right. Both of you, then, agree that the contribution issue has to be tried.

(Doc. 107 at 8.)

For good measure, the Court asked:

> Can we not stipulate that we're going to have a trial on the contribution issues, and the others are going to be resolved by summary judgment . . . ?

(Doc. 107 at 15.) The parties responded:

> Mr. BLACK: . . . [A]s to the issues, other than the contribution limits, I believe that will be susceptible to summary adjudication.
>
> . . .
>
> MR. BROWN: It's my suggestion, your Honor, that plaintiffs are prepared to dispose of every issue except for the contribution limits by summary ruling.

(Doc. 107 at 17–18.)

The Court then ruled that the claims related to contribution limits would be

set for a bench trial and would not be resolved by summary judgment:

> MR. BLACK: . . . Your Honor, I would be prepared to so stipulate as to the issues other than contribution limits.
>
> THE COURT: No. We can't—contribution limits here are going to resolve—require resolution by trial.
>
> MR. BLACK: Absolutely.
>
> THE COURT: And that's the court's ruling today.

(Doc. 107 at 18.)

After a brief recess to discuss other matters, the parties again represented to the Court that they stipulated to a trial on the contribution-limits claims:

> MR. BROWN: . . . We would again propose that the trial on that portion [the contribution limits] be held in August.

(Doc. 107 at 22.)

The Court then issued a scheduling order (attached as Exhibit B) making clear in the first paragraph that it would hold a bench trial to adjudicate the contribution-limits claims:

> The Court will hold a bench trial to adjudicate the plaintiffs' claim that the monetary limits in Montana Code Annotated § 13–37–216(1), (3), (5) are unconstitutional. All other matters shall be adjudicated by summary judgment.

(Doc. 73 at 2.)

The Ninth Circuit has long held that district courts have broad discretion to

control the pretrial phase of litigation: "A district judge is given broad discretion in supervising the pre-trial phase of litigation, with a view toward sifting the issues in order that the suit will go to trial only on questions involving honest disputes of fact or law." *Fed. Deposit Ins. Corp. v. Glickman*, 450 F.2d 416, 419 (9th Cir. 1971); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) (observing that district courts "necessarily require a great deal of latitude in scheduling trials"); *United States v. Garrett*, 179 F.3d 1143, 1144 (9th Cir. 1999) (en banc) (observing that district courts have broad discretion in the management and scheduling of trials).

Even assuming it is appropriate for the defendants to file a motion for summary judgment, they have missed the deadline by more than two months. In the scheduling order, the Court ordered that the deadline for motions for summary judgment was April 13, 2012, and that the parties would be heard on their motions on May 2, 2012. (Doc. 73 at 2.)

In short, the defendants' motion for summary judgment is improper and untimely. The Court agreed to expedite the schedule for this case in order to resolve the contribution-limits claims as early as possible prior to when the 2013 Montana Legislature convenes and to resolve all other matters by summary adjudication prior to the 2012 primary election (which it did). This expedited schedule was contingent on resolving the contribution-limits claims by trial and

7

not summary adjudication. The March 9, 2012, hearing made that contingency clear, and the subsequent scheduling order made that contingency clear. Even assuming the defendants' motion is proper, it is untimely by more than two months. The Court cannot permit the defendants to change the rules in the middle of the stream. For these reasons, the Court denies the defendants' motion for summary judgment.

IT IS ORDERED that the defendants' motion for summary judgment (doc. 102) is DENIED.

IT IS FURTHER ORDERED that the plaintiffs' motions to extend the deadline for responding to the defendants' motion for summary judgment (doc. 108, 111) are DENIED AS MOOT.

Dated this 29th day of June 2012.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE