Matthew G. Monforton  (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Tele:  (406) 570-2949
Fax: (406) 551-6919
E-mail: matthewmonforton@yahoo.com

Attorney for Intervenor-Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA

| | |
|---|---|
| DOUG LAIR, *et al.*,<br><br>     Plaintiffs,<br><br>  v.<br><br>JONATHAN MOTL, in his official capacity as Commissioner of Political Practices; TIMOTHY FOX, in his official capacity as Montana Attorney General, *et al.*,<br><br>     Defendants. | Case No. 6:12-cv-00012-CCL<br><br>**BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT IN ACCORDANCE WITH FRCP RULE 15(d)** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION .................................................................................1

STATEMENT OF FACTS ......................................................................2

ARGUMENT .......................................................................................6

I     THE HILL CAMPAIGN SHOULD BE GRANTED LEAVE TO
FILE A SUPPLEMENTAL COMPLAINT.......................................6

II    THE NINTH CIRCUIT'S GRANTING OF HILL'S MOTION
TO INTERVENE ENTITLES HIM TO CONTINUE AS A
LITIGANT IN THIS MATTER .......................................................9

III   THE HILL CAMPAIGN'S CLAIMS ARE RIPE FOR
AJUDICATION.............................................................................12

      A.   The Hill Campaign's Claims Satisfy the Constitutional
Component of the Ripeness Doctrine .......................................12

      B.   The Hill Campaign's Claims Satisfy the Prudential
Component of the Ripeness Doctrine .......................................16

CONCLUSION ..................................................................................17

# TABLE OF AUTHORITIES

## Cases:

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) ........................................................10

*Ariz. Right to Life PAC v. Bayless,*
    320 F.3d 1002 (9th Cir. 2003) ..........................................................8

*City of Auburn v. Qwest Corp.,*
    260 F.3d 1160 (9th Cir. 2001) ........................................................13

*Farris v. Seabrook,*
    677 F.3d 858 (9th Cir. 2012) ....................................................... 7-8

*Human Life of Washington, Inc. v. Brumsickle,*
    624 F.3d 990 (9th Cir. 2010) ...........................................................8

*Jacobus v. Alaska,*
    338 F.3d 1095 (9th Cir. 2003) ........................................... 12-15, 16

*Keith v. Volpe,*
    858 F.2d 467 (9th Cir. 1988) ...........................................................6

*Kootenai Tribe of Idaho v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002) ........................................................10

*Lair v. Bullock,*
    798 F.3d 736 (9th Cir. 2015) .........................................................12

*League of United Latin American Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir. 1997) ........................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    134 S.Ct. 1377 (2014)....................................................................16

*Northstar Financial Advisors, Inc. v. Schwab Investments,*
    779 F.3d 1036 (9th Cir. 2015) ..........................................................6

*Susan B Anthony List v. Driehaus,*
 134 S.Ct. 2334 (2014)........................................................................16

*Thalheimer v. City of San Diego,*
 645 F.3d 1109 (9th Cir. 2011) ...........................................................7

*Thomas v. Anchorage Equal Rights Comm'n,*
 220 F.3d 1134 (9th Cir. 2000) .........................................................12

*United States v. Oregon,*
 913 F.2d 576 (9th Cir. 1990) ...........................................................11

*Wolfson v. Brammer,*
 616 F.3d 1045 (9th Cir. 2010) ..............................................8, 12, 16

## Statutes & Rules:

Montana Code Annotated

 § 13-37-216................................................................................*passim*

## INTRODUCTION

Intervenor-Plaintiffs Rick Hill, A Lot of Folks for Rick Hill, and Lorna Kuney (hereinafter, the "Hill Campaign"), have been parties in this matter since the Ninth Circuit granted them intervenor status on October 30, 2012.  The Hill Campaign's involvement arose after this Court issued an order on October 3, 2012, enjoining enforcement of the contribution limits contained in § 13-37-216, MCA. Doc. 157.  The Hill Campaign relied upon that order (as did several other candidates) when it accepted a $500,000 contribution from the Montana Republican Party on October 5, 2012, a time when the order was still in full force and effect.

Shortly after the Ninth Circuit stayed the order on October 9, 2012, the Bullock campaign filed an administrative complaint against the Hill Campaign for its acceptance of the "excess" campaign contribution.  Montana's Commissioner of Political Practices has refused to rule on the merits of this frivolous, politically motivated complaint, thereby keeping Mr. Hill in legal limbo for over three years. The Commissioner has recently stated, however, that he intends to file a civil enforcement action against the Hill Campaign after January 2016.  That action will expose the Hill Campaign, and Mr. Hill personally, to as much as $1.5 million in penalties – simply for accepting a contribution as permitted by this Court's October 2012 order.

The Hill Campaign therefore moves this Court for leave to file a supplemental complaint in accordance with Rule 15(d) of the Federal Rules of Civil Procedure.  Its proposed supplemental complaint contains two claims: (1) a facial challenge under the First Amendment to the political party contribution limits established by § 13-37- 216(2), MCA, and (2) a First Amendment challenge to § 13-37- 216(2), MCA, as applied to the Hill Campaign's acceptance of the "excess" contribution on October 5, 2012.  These claims arise from undisputed evidence already in the record and require no additional discovery.

Rick Hill lost the election in 2012.  He and his wife simply want to move on with their lives.  Defendants refuse to let that happen.  After three anxious years of facing a civil prosecution with a potential seven-figure penalty, Mr. Hill deserves his day in court.


## STATEMENT OF FACTS

On October 3, 2012, this Court enjoined enforcement of the contribution limits contained in § 13-37-216, MCA.  Doc. 157.  The Court timed its order to be effective "before voting begins in the upcoming elections," thereby allowing candidates and political parties to rely upon it in making campaign decisions during the last weeks of the 2012 election.  *Id.,* p. 5.

In reliance upon the Court's order, the Hill Campaign accepted a $500,000

2

contribution from the Montana Republican Party on October 5, 2012.  Exhibit 1, p. 4, ¶14.[1]  After the Ninth Circuit stayed this Court's order on October 9, 2012, the Hill Campaign's acceptance of campaign contributions conformed strictly to § 13-37-216, MCA.  *Id.* ¶14.

On October 17, 2012, the Bullock campaign filed an administrative complaint with then-Commissioner Jim Murry against the Hill Campaign (*O'Brien v. Hill*, COPP-2012-CFP-0029).  Exhibit 1, p. 4, ¶17; Exhibit 2, pp. 61-64.  The complaint alleges the Hill Campaign's acceptance of the $500,000 contribution violated Montana law.  Exhibit 1, p.4, ¶18; Exhibit 2, p. 63.  Despite the Hill Campaign's reliance on this Court's order in accepting the $500,000 contribution - - an order that was in full force and effect at the time the contribution was received -- the Commissioner's office has refused to dismiss the complaint.  Exhibit 2, p. 106.

The Hill Campaign moved this Court for intervention on October 25, 2012, in an attempt to have vacated an unlawful injunction issued by a state court requiring the Campaign to cancel campaign advertisements purchased with proceeds from the $500,000 contribution.  Doc. 179.  This Court denied the motion on October 26, 2012, but noted that the Hill Campaign could seek review in the

---

[1] Exhibit 1 is the Hill Campaign's proposed supplemental complaint.  The allegations are supported by Mr. Hill's signed verification at the end of that document.

Ninth Circuit.  Doc. 182, p. 14.

The Hill Campaign responded accordingly and appealed the decision.  Doc. 183.  On October 30, 2012, the Ninth Circuit denied the request to modify the order but granted permissive intervention under Rule 24 of the Federal Rules of Civil Procedure.  See 9th Cir. DktEntry 17 (Case No. 12-35809), p. 4.  The Hill Campaign has since participated fully as a litigant in this matter.

On January 4, 2013, Deputy Commissioner Jay Dufrechou issued an order stating that then-Commissioner Jim Murry had a conflict of interest and, as a result, Mr. Dufrechou had been appointed to review the administrative complaint filed against the Hill Campaign.  Exhibit 2, p. 65.  The order further stated that "the investigations and any decisions of the Commissioner's Office on the campaign finance complaints listed above are STAYED pending a ruling on the statutory and/or constitutional issues that are also at issue in the above finance complaints." *Id*., p. 66.

The current Commissioner, Defendant Jonathan Motl, stated in September 2014 that this Court's order issued on October 3, 2012 is "void and of no consequence for the 2012 elections."  Exhibit 2, p. 89.  On May 27, 2015, in response to a Ninth Circuit ruling issued the previous day, Defendant Motl stated the following in a radio interview:

"Now that the [Ninth Circuit's] decision has come out and has vacated
or voided the court order, that means that the campaign contribution
limits are in effect, and were in effect when Mr. Hill took the $500,000
contribution. So now, we'll have to reopen and deal with that complaint.

Ex 1, p. 8, ¶33.[2]

The Commissioner's docket, which is posted on his government website,

states that the Commissioner intends to soon file an enforcement action against Mr.

Hill:

Please be informed that the COPP January 4, 2013 Abeyance Order
will terminate on January 15, 2016.  After January 15, 2016 the
COPP will explore a statute of limitations extension or, if necessary,
take placeholder legal action that will suspend the statue of
limitations. Whatever action that is taken will defer to the eventual
Federal Court Decision on the constitutionality of Montana's 2012
contribution limits.

Exhibit 2, p. 106.

The Commissioner's upcoming civil enforcement action will expose the Hill

Campaign, and Mr. Hill personally, to penalties of up to three times the amount of

the $500,000 contribution from the Montana Republican Party.  See § 13-37-

128(2), MCA.  Mr. Hill is therefore facing exposure of up to $1.5 million for

actions he took that were in reliance upon, and consistent with, this Court's

October 2012 order.

_____

[2] A recording of this interview can be found at:
http://newstalkkgvo.com/commissioner-chairman-comment-on-charges-against-
former-candidate-rick-hill-youtube/

**ARGUMENT**

I    THE HILL CAMPAIGN SHOULD BE GRANTED LEAVE TO FILE A
     SUPPLEMENTAL COMPLAINT

The Hill Campaign's claims in this matter arise from actions occurring

subsequent to the filing of the original complaint.  Rule 15(d) allows litigants to

assert claims in a supplemental complaint arising from acts occurring after the

filing of the initial complaint.[3]  The Rule therefore obviates "the needless formality

and expense of instituting a new action when events occurring after the original

filing indicated a right to relief."  *Northstar Financial Advisors, Inc. v. Schwab*

*Investments*, 779 F.3d 1036, 1044 (9th Cir. 2015).  A supplemental complaint filed

in accordance with Rule 15(d) "is a useful device, enabling a court to award

complete relief, or more nearly complete relief, in one action, and to avoid the cost,

delay and waste of separate actions which must be separately tried and

prosecuted."  *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).  Rule 15(d) is "a

tool of judicial economy and convenience" and "[i]ts use is therefore favored."  *Id.*

---

[3] Rule 15(d) of the Federal Rules of Civil Procedure states as follows:

On motion and reasonable notice, the court may, on just terms, permit
a party to serve a supplemental pleading setting out any transaction,
occurrence, or event that happened after the date of the pleading to be
supplemented. The court may permit supplementation even though the
original pleading is defective in stating a claim or defense. The court
may order that the opposing party plead to the supplemental pleading
within a specified time.

(citations omitted).

The first claim in the Hill Campaign's proposed supplemental complaint is a facial challenge under the First Amendment to the limits imposed by § 13-37-216(2), MCA, upon contributions by political parties.  Exhibit 1, pp. 8-9.  The claim is based upon the gross underinclusiveness of that statutory provision.  The Hill Campaign intends to rely entirely upon undisputed evidence that is already in the record, such as documents generated by the Commissioner's office as well as admissions made at trial by former Commissioner Jim Murry, who testified on behalf of the State.

The second claim in the Hill Campaign's proposed supplemental complaint is a challenge to § 13-37-216(2), MCA, as applied the Hill Campaign's acceptance of the $500,000 contribution.  Exhibit 1, p. 9.  This claim arises from the Hill Campaign's reliance upon this Court's October 2012 order enjoining enforcement of Montana's contribution limits.  Injunctions concerning election-related speech, like the one this Court issued in 2012, must issue promptly because "timing is of the essence in politics and a delay of even a day or two may be intolerable." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011) (upholding district court's enjoining of contribution limits to independent committees four months before June 2010 elections); *Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012) (district court properly enjoined enforcement of contribution limit

imposed upon political committees two months before deadline to gather
signatures for recall petition).

Injunctive relief is necessary in First Amendment cases such as *Farris*,
*Thalheimer* and this one because speakers will be chilled from engaging in
election-related speech unless they are assured that they can do so without risking
penalties. The law therefore encourages plaintiffs to seek such relief pursuant to
"what might be called a 'hold your tongue and challenge now' approach rather
than requiring litigants to speak first and take their chances with the
consequences." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010),
quoting *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003).

The safe harbor offered by such injunctions, however, would disappear if
speakers could be prosecuted for speech protected by an injunction that is later
dissolved.  Citizens would be forced to wait for the state to exhaust appellate
remedies before being able to speak without fear of penalty.  Elections often come
and go long before then.  *Human Life of Washington, Inc. v. Brumsickle*, 624 F.3d
990, 1002 (9th Cir. 2010) ("the inherently brief duration of an election is almost
invariably too short to enable full litigation on the merits").

Both of the claims in the Hill Campaign's proposed supplemental complaint
are intertwined with the claims being asserted by the *Lair* Plaintiffs.  Leave to file
this complaint will promote judicial economy by obviating the need for the Hill

8

Campaign to file a separate action in this Court.

The Hill Campaign's supplemental complaint will promote judicial economy for another reason.  Should this Court agree with the *Lair* Plaintiffs and again enjoin enforcement of Montana's campaign contribution limits, the issue will again arise as to whether candidates may rely on such a ruling in time to plan their campaigns for 2016.  The Commissioner's outrageous threats against the Hill Campaign because of its reliance upon this Court's October 2012 will chill reliance on any future injunctions issued by this Court.  Without a definitive ruling from this Court that its orders must be respected by the State, no sane candidate will risk becoming the next Rick Hill and will instead wait for appellate proceedings lasting months or, more likely, years, to run their course.  By then, the candidate's election will likely be over.

The Hill Campaign's proposed supplemental complaint is exactly the kind of pleading contemplated by Rule 15(d).  This Court should therefore grant leave to the Hill Campaign to file it.

## II   THE NINTH CIRCUIT'S GRANTING OF HILL'S MOTION TO INTERVENE ENTITLES HIM TO CONTINUE AS A LITIGANT IN THIS MATTER

The Ninth Circuit granted the Hill Campaign intervenor status on October 30, 2012.  See 9th Cir. DktEntry 17 (Case No. 12-35809) p. 4.  The Hill Campaign has proceeded as a normal litigant since that time.  It believes that its status as an

intervenor remains in full force and effect. *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997) ("as a general rule, intervenors are permitted to litigate fully once admitted to a suit").

Along with the Ninth Circuit's order, Rule 24 allows the Hill Campaign to continue as a litigant. In this circuit, "Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). An intervenor's claim must satisfy the following requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. Both claims contained in the Hill Campaign's proposed supplemental complaint satisfy these requirements.

First, as found by the Ninth Circuit, the Hill Campaign's claims share common questions of law and fact with the *Lair* Plaintiffs' claims. 9th Cir. DktEntry 17, p.4, citing *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002). Like the *Lair* Plaintiffs, the Hill Campaign is challenging Montana's party contribution limits on First Amendment grounds, both facially and as applied. These claims clearly share common questions of law and fact with the main action.

Second, the Hill Campaign's intervention is timely. Timeliness is based on a consideration of three criteria: the stage of the proceeding, prejudice to other

parties, and the reason for and length of the delay.  *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990).  All three militate towards a finding of timeliness in this matter.  The Hill Campaign sought and was granted intervention status three years ago by the Ninth Circuit.  It has been actively asserting its claims ever since. The Hill Campaign will require no discovery for these claims.  The State therefore cannot claim surprise, delay, or any other form of prejudice as a result of the Hill Campaign's continued participation in this matter.[4]  Finally, there has been no delay by the Hill Campaign.  Its interest in this matter did not materialize until it was offered a $500,000 contribution by the Montana Republican Party on October 5, 2012.  Until that date, the Hill Campaign had no knowledge that this contribution would be available.  Exhibit 1, p. 4, ¶13.  It moved to intervene a few weeks later.  The Hill Campaign has therefore satisfied the timeliness requirement of Rule 24(b).

Third, this Court has an independent basis for jurisdiction over the Hill Campaign's claims because both of them arise under the First Amendment.  The Hill Campaign's claims are also ripe, as explained in more detail below.

The Hill Campaign's intervention, which began three years ago, involves (1) claims that share common questions of law and fact with the main action, (2)

---

[4] To the extent that any delays occur in this matter because of additional discovery, it will be because the *State* has requested to reopen discovery.  Doc. 204, p. 3.

timeliness, and (3) an independent basis for jurisdiction.  The Hill Campaign

should therefore be allowed to continue as a litigant in this matter.

III     THE HILL CAMPAIGN'S CLAIMS ARE RIPE FOR AJUDICATION

The Ninth Circuit in *Lair* suggested that the Hill Campaign's claims might

not be ripe because the Commissioner had not yet filed an enforcement action

against him.   *Lair v. Bullock*, 798 F.3d 736, 748 n.9 (9th Cir. 2015).  The record

on appeal, however, did not contain recent statements from the Commissioner

making clear that he intends to soon file a civil enforcement action against the Hill

Campaign.  As shown below, the Commissioner's credible threat of an imminent

civil enforcement against the Hill Campaign makes the Campaign's claims ripe for

adjudication by this Court.

A.  <u>The Hill Campaign's Claims Satisfy the Constitutional Component of</u>
    <u>The Ripeness Doctrine</u>

The ripeness doctrine "has both constitutional and prudential components."

*Wolfson,* 616 F.3d at 1058.  Analyzing the constitutional component "ensure[s]

that issues presented are definite and concrete, not hypothetical or abstract."

*Jacobus v. Alaska*, 338 F.3d 1095, 1104 (9th Cir. 2003), quoting *Thomas v.*

*Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

Thus, "while a generalized possibility of prosecution does not satisfy the ripeness

requirement, a genuine threat of imminent prosecution does."  *Id.,* citing *City of*

*Auburn v. Qwest Corp.*, 260 F.3d 1160, 1172-73 (9th Cir. 2001).  In determining whether a genuine threat of imminent prosecution exists, courts examine three factors: 1) whether the plaintiffs have articulated a "concrete plan" to violate the law in question; 2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and 3) the history of past prosecution or enforcement under the challenged statute.  *Id.* at 1105, quoting *Thomas*, 22 F.3d 1139.

As with this matter, *Jacobus* involved a First Amendment challenge by plaintiffs to a state campaign finance law.  The particular law in that case prohibited individuals from volunteering professional services to political parties exceeding $5000 in value.  *Id.* at 1100.  The plaintiffs' volunteer legal services exceeded that limit.  *Id*. at 1104.  State authorities sent them a letter stating that, if the law was upheld, the State reserved the right to prosecute them but wouldn't do so during the pendency of the litigation.  *Id.*

The Ninth Circuit held that the plaintiffs' claim satisfied all three constitutional ripeness factors.  First, the plaintiffs had "gone far beyond the requirement that they articulate a concrete plan to violate the law, and instead have actually engaged in the illegal behavior at issue."  *Jacobus*, 338 F.3d at 1105.  Second, "while the letter sent to Jacobus does not threaten to initiate enforcement proceedings in so many words, it indicates that APOC is only awaiting the

outcome of the litigation to initiate such proceedings." *Id.* Third, state authorities had "a general policy of seeking civil fines in response to violations of Alaska campaign finance law." *Id.*

Because the plaintiffs in *Jacobus* satisfied all three ripeness factors, the Ninth Circuit reached the merits of their claims. The Hill Campaign's claims arise from facts that are very similar to those in *Jacobus* and also satisfy each of the three components of constitutional ripeness.

First, like the *Jacobus* plaintiffs, the Hill Campaign has gone far beyond the requirement to articulate a concrete plan to violate the law, and instead has actually "violated" Montana's contribution limits. The $500,000 contribution it accepted from the Montana Republican Party in October 2012 far exceeded the limits imposed by § 13-27-216, MCA.

Second, Commissioner Motl has made clear that he will file an enforcement action against the Hill Campaign in the very near future. In an administrative ruling he issued in September 2014, Commissioner Motl described this Court's order issued on October 3, 2012 as "void and of no consequence for the 2012 elections." Exhibit 2, p. 89. On May 27, 2015, in response to the Ninth Circuit's ruling on May 26, 2015, Motl stated the following in a radio interview:

> "Now that the [Ninth Circuit's] decision has come out and has vacated or voided the court order, that means that the campaign contribution limits are in effect, and were in effect when Mr. Hill took the $500,000 contribution. So now, we'll have to reopen and deal with that complaint.

14

Ex 1, p. 8, ¶33.  Additionally, Commissioner Motl has posted on the office's

government website a statement that he intends to file an enforcement action

against Mr. Hill around January 2016:

> Please be informed that the COPP January 4, 2013 Abeyance Order
> will terminate on January 15, 2016. After January 15, 2016 the
> COPP will explore a statute of limitations extension or, if necessary,
> take placeholder legal action that will suspend the statue of
> limitations. Whatever action that is taken will defer to the eventual
> Federal Court Decision on the constitutionality of Montana's 2012
> contribution limits.

Exhibit 2, p. 106.  These statements by Commissioner Motl demonstrate a far

stronger threat of civil prosecution than the evidence the *Jacobus* court found

sufficient, which merely consisted of a letter from Alaska authorities to the

plaintiffs that did "not threaten to initiate enforcement proceedings in so many

words" but simply "indicate[d] that [the state agency] is only awaiting the outcome

of the litigation to initiate such proceedings."  *Jacobus*, 338 F.3d at 1105.

Third, the Commissioner's office has a long history of vigorously enforcing

Montana's contribution limits.  See, *e.g.*, Exhibit 2, pp. 4-12 (*Friede v. Rice & Hill

County Rep. Cent. Comm*. (decision issued 5/02)); *id.*, pp. 16-37 (*Little v.

Progressive Missoula* (decision issued 7/22/04)); *id.*, pp. 38-43 (*Gunter v. Orzech*,

(decision issued 12/19/08)); *id.*, pp. 44-56 (*Wilcox v Raser,* (decision issued

5/26/2010)); *id.*, pp. 57-60 (*Meier v. Horn* (decision issued 8/22/11)); *id.*, pp. 67-84

(*Tuininga v. Bullock*  (decision issued 10/17/13)) *id.*, pp. 92-104 (*Clark v.

*Datsopoulos*, (decision issued 10/8/14)).  The third prong of the constitutional ripeness test is therefore satisfied.

There is undisputed evidence that (1) Mr. Hill "violated" Montana's contribution limits by accepted $500,000 (2) the State intends to soon file an enforcement action against him for doing so, and (3) the State has a long history of enforcing its campaign contribution limits.  Mr. Hill's claims are therefore constitutionally ripe.

C     The Hill Campaign's Claims Satisfy the Prudential
       Component of the Ripeness Doctrine

Along with examining the constitutional component of ripeness, courts have (until recently) required that claims satisfy the prudential component of ripeness, which requires courts to (1) consider the fitness of the claims for judicial review and (2) the hardship to the plaintiff of withholding relief.  *Wolfson,* 616 F.3d at 1060.  A claim is "fit" if "it is primarily legal and does not require substantial further factual development."  *Id.*  A "likelihood of prosecution creates hardship for the parties."  *Jacobus*, 338 F.3d at 1105.

The Supreme Court has recently called into question the continued viability of the prudential component of ripeness.  *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334 (2014) ("To the extent respondents would have us deem petitioners' claims nonjusticiable on grounds that are prudential, rather than constitutional, that

request is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging") (internal punctuation omitted), quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014).  Even if the prudential component of the ripeness doctrine still exists, the Hill Campaign's claims easily satisfy its requirements.

First, the Hill Campaign's claims involve only legal issues and do not require any discovery or factual development.  They are thus fit for judicial review.

Second, the Hill Campaign's claims satisfy the hardship requirement.  As shown above, there is a substantial likelihood that the State will file a civil enforcement action against the Hill Campaign, thereby exposing Mr. Hill to as much as $1.5 million in penalties.  This would clearly create a hardship for both him and the Hill Campaign.

## CONCLUSION

For all of the foregoing reasons, the Hill Campaign respectfully moves this Court to grant it leave to file its supplemental complaint.


DATED: October 16, 2015        Respectfully submitted,
                               Monforton Law Offices, PLLC

                               /s/ Matthew G. Monforton
                               Matthew G. Monforton

                               Attorney for Intervenor-Plaintiffs

17

## <u>CERTIFICATE OF COMPLIANCE WITH L. R. 7.1(d)(2)(E)</u>

I hereby certify that this document, excluding caption, tables and certificate of compliance, contains 3887 words, as determined by the word processing software used to prepare this document, specifically Microsoft Word 2007.

DATED: October 16, 2015          Respectfully submitted,
                                 Monforton Law Offices, PLLC

                                 <u>/s/ Matthew G. Monforton</u>
                                 Matthew G. Monforton

                                 Attorney for Intervenor-Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Montana by using the CM/ECF system on October 16, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


DATED: October 16, 2015  Respectfully submitted,
           Monforton Law Offices, PLLC

           /s/ Matthew G. Monforton
           Matthew G. Monforton

           Attorney for Intervenor-Plaintiffs