TIMOTHY C. FOX
Montana Attorney General
DALE SCHOWENGERDT
Solicitor General
MATTHEW T. COCHENOUR
PATRICK M. RISKEN
Assistant Attorneys General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone:  406-444-2026
Fax:  406-444-3549
dales@mt.gov
mcochenour2@mt.gov
prisken@mt.gov

COUNSEL FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DOUG LAIR, STEVE DOGIAKOS, AMERICAN TRADITION PARTNERSHIP, AMERICAN TRADITION PARTNERSHIP PAC, MONTANA RIGHT TO LIFE ASSOCIATION PAC, SWEETGRASS COUNCIL FOR COMMUNITY INTEGRITY, LAKE COUNTY REPUBLICAN CENTRAL COMMITTEE, BEAVERHEAD COUNTY REPUBLICAN CENTRAL COMMITTEE, JAKE OIL, LLC, JL OIL, LLC, CHAMPION PAINTING, INC., and JOHN MILANOVICH,<br><br>Plaintiffs,<br>v.<br><br>JONATHAN MOTL, in his official capacity as Commissioner of Political Practices; TIM FOX, in his official capacity as Attorney General of the State of Montana; and LEO GALLAGHER, in his official capacity as Lewis and Clark County Attorney,<br><br>Defendants. | CV 12-12-H-CCL<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR IMMEDIATE PARTIAL STAY OF ORDER AND JUDGMENT PENDING APPEAL** |

# INTRODUCTION

The Lair Plaintiffs challenged the constitutionality of Montana's contribution limits that were enacted by citizens' initiative I-118 in 1994. Both parties moved for summary judgment and, on May 17, 2016, this Court issued an order granting summary judgment in favor of Plaintiffs and against Defendants (Montana). This Court ruled that Montana's contribution limits on individuals, political committees, and political parties were unconstitutional under the framework established by the Ninth Circuit in *Lair v. Bullock*, 798 F.3d 736, 748 (9th Cir. 2015) (*Lair II*) and *Montana Right to Life Assn. v. Eddleman*, 343 F.3d 1085 (9th Cir. 2003). Doc. 278 at 30.

Based on Montana law, this Court's summary judgment ruling effectively reinstated the contribution limits that existed before I-118. *See e.g.*, *State ex rel. Woodahl v. District Ct.*, 511 P.2d 318, 322 (Mont. 1973) (unconstitutional amendment to a law "leaves the section intact as it had been before the attempted amendment."); *accord* Mont. Atty. Gen. Op. 51-2, 2005 Mont. AG LEXIS 2 (effect of judicial decision invalidating state constitutional amendments is to restore the constitution's language as it existed before the invalid amendments).

The Commissioner of Political Practices has issued a public statement explaining the impact of this Court's ruling and is in the process of notifying

candidates of the impact. Additionally, the Commissioner has dismissed the complaint against Rick Hill, who was a 2012 gubernatorial candidate.[1]

While the pre-I-118 contribution limits for individuals and political committees currently apply, the same cannot be said for the limits on political parties. This is because I-118 reduced the limits for individuals and political committees, but it increased the limits for political parties. Applying the pre-I-118 law to political parties is unworkable because the limits are lower than those the Court ruled unconstitutional. The upshot is that Montana currently has contribution limits on the amounts that individuals and political committees can donate to a candidate but no limits on the amounts that political parties can donate. This loophole must be closed. As the Supreme Court has recognized "parties continue to organize to elect candidates, and also function for the benefit of donors whose object is to place candidates under obligation . . . ." Federal Election Commn. v. Colorado Republican Fed. Campaign Comm. (Colorado II), 533 U.S. 431, 455 (2001). Further, the "parties' capacity to concentrate power to elect is the very capacity that apparently opens them to exploitation as channels for circumventing contribution and coordinated spending limits" that are binding on individuals and political committees. Id.

---

[1] *See* http://politicalpractices.mt.gov/default.mcpx.

Accordingly, Montana asks this Court for a *partial* stay of its Order and Judgment. Specifically, Montana requests that this Court stay the portion of its order that declared Mont. Code Ann. § 13-37-216(3) (2011) unconstitutional and enjoined the enforcement of political party limits. In compliance with Fed. R. Civ. P. 62(c), Montana has filed a notice of appeal prior to filing a motion for a stay with this Court.

## ARGUMENT

Under Fed. R. Civ. P. 62(c), this Court must consider four factors when considering Montana's motion for a stay pending appeal: (1) whether Montana has a strong likelihood of success on the merits of the appeal; (2) whether Montana is likely to suffer irreparable injury without a stay; (3) whether a stay would substantially injury the other parties; and (4) whether the stay would be in the public's interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also*, *Lair v. Bullock* (*Lair I*), 697 F.3d 1200, 1203 (9th Cir. 2012). As set forth below, Montana has satisfied the necessary factors, and thus, this Court should grant the stay.

### A. **Montana is Likely to Succeed on the Merits.**

Under the first stay factor, a stay applicant is not required to show that "it is more likely than not" that it will ultimately prevail on the merits. *Lair I*, 697 F.3d at 1204 (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011)). As the Ninth Circuit has recognized, requiring a party to show the probability of

ultimate success is at odds with the purpose of a stay, "which is to give the reviewing court the time to 'act responsibly,' rather than doling out 'justice on the fly.'" *Leiva-Perez*, 640 F.3d at 967. Rather, under the first factor, a stay applicant need only show that, "at a minimum," "there is a substantial case for relief on the merits." *Lair I*, 697 F.3d at 1204. Here, Montana has a substantial case for relief on the merits.

### 1. Quid Pro Quo Corruption

Since *Buckley v. Valeo*, 424 U.S. 1 (1976), the United States Supreme Court has recognized that, unlike an expenditure limit, a contribution limit "entails only a marginal restriction upon the contributor's ability to engage in free communication." *Buckley*, 424 U.S. at 20-21. Contributions constitute symbolic expressions of support and involve "little direct restraint" on political communication. *Id.* at 21. Thus, the Court applies a "relatively complaisant" review to contribution limits. *See Federal Election Commn. v. Beaumont*, 539 U.S. 146, 161 (2003). Contribution limits are constitutional if they further a sufficiently important state interest and if they are closely drawn. *Buckley*, 424 U.S. at 25; *McCutcheon v. Federal Election Commn.*, 134 S. Ct. 1434, 1444 (2014).

Under *Lair II*, Montana's limits should be upheld if they further the sufficiently important interest of preventing quid pro quo corruption or its appearance and if they are closely drawn, meaning that they "(a) focus narrowly on

the state's interest, (b) leave the contributor free to affiliate with a candidate, and (c) allow the candidate to amass sufficient resources to wage an effective campaign." *Lair II*, 798 F.3d at 748.

Throughout this litigation, Montana has advanced its interest in preventing quid pro quo corruption and its appearance as the sufficiently important interests justifying contribution limits. Under *Buckley* and *McCutcheon*, the important state interests are not limited to actual, demonstrable corruption. Rather, "[o]f almost equal concern as the danger of actual quid pro quo arrangements is the impact of the appearance of corruption stemming from public awareness of the opportunities for abuse *inherent* in a regime of large individual financial contributions." *Buckley*, 424 U.S. at 27 (emphasis added); *see also*, *United States v. Whittemore*, 776 F.3d 1074, 1081 (9th Cir. 2015) (noting that neither *Citizens United* nor *McCutcheon* overruled this holding of *Buckley*).

Montana's interest in preventing corruption and the appearance of corruption applies to political parties. *See Colorado II*, 533 U.S. at 455 (party occupies "same position as some individuals and PACs, as to whom coordinated spending limits have already been held valid . . . ."). Additionally, because no limits cap how much individuals and political committees can donate to a party, the limits on political parties' contributions to a candidate serve to prevent circumvention, which is a well-recognized theory of corruption. *Id*. at 456.

In support of its interest, Montana presented examples of quid pro quo corruption and its appearance to this Court, including trial testimony from *Eddleman* and more recent examples, such as the offer of $100,000 presented to Republican senators if they would agree to introduce and vote on a right-to-work bill. *See* Docs. 241 at 11-16; 246 at 12-19. This Court rejected Montana's evidence of corruption, noting that the offers were not accepted and that "if anything, the evidence shows that Montana politicians are relatively incorruptible." Doc. 278 at 19.

Of course, the jury verdict in the *Wittich* case, which found that a Montana politician in fact violated Montana's campaign finance laws, stands in contrast to this Court's assessment. But, more importantly, this Court's analysis ignores that the quid pro quo examples presented by Montana show that "opportunities for abuse" exist. To put it succinctly, this Court adopted and applied an incorrect quid pro quo standard that appears to require actual corruption. At the least, this Court's standard departs from the "relatively complaisant" review applicable to contribution limits and disregards the preventative nature of contribution limits. *See McCutcheon*, 134 S. Ct. at 1458 (quoting *Citizens United*, 558 U.S. at 357) ("restrictions on direct contributions are preventative, because few if any contributions to candidates will involve quid pro quo arrangements.")

On this point, it is also significant that the Supreme Court has not overruled numerous decisions involving constitutional challenges to contribution limits wherein the Court interpreted corruption more broadly than the standard articulated by this Court and, for that matter, in *Lair II*. *See e.g.*, *Colorado II*, 533 U.S. at 440-41 (contribution limits are "more clearly justified" than other kinds of limits due to the connection to corruption, which is "understood not only as quid pro quo agreements, but also as undue influence on an officerholder's [sic] judgment, and the appearance of such influence."); *Beaumont*, 539 U.S. at 155-56 (same); *McConnell v. Federal Election Commn.*, 540 U.S. 93, 143 (2003), *overruled in part*, *Citizens United*, 558 U.S. 310 (corruption not limited to "cash-for-votes exchanges," or "'confined to bribery of public officials, but extending to the broader threat from politicians too compliant with the wishes of large contributors.'") (Quoting *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 389 (2000)). These cases illustrate that this Court's interpretation of quid pro quo corruption raises serious legal questions such that a stay is warranted.

To be clear, Montana is not required to convince this Court that it made an error. Nor is it required to show that it will ultimately prevail on appeal. All Montana must do is show that it has a "substantial case for relief on the merits." *Lair I*, 697 F.3d at 1204. Montana has met this burden.

## 2. Closely Drawn Standard

Contribution limits are appropriately tailored "if they (a) focus narrowly on the state's interest, (b) leave the contributor free to affiliate with a candidate, and (c) allow the candidate to amass sufficient resources to wage an effective campaign." *Lair II*, 798 F.3d at 748. The Court agreed with Montana that the second factor was satisfied; however, the Court determined that the limits were not narrowly focused and did not allow a candidate to amass sufficient resources. Doc. 278 at 21. As shown below, Montana has a substantial case for relief on the merits.

### a. Montana's limits are narrowly focused

This Court determined that Montana's limits were not narrowly focused and "could never be said to focus narrowly" on a constitutional interest because they were aimed at reducing influence and leveling the playing field. Doc. 278 at 21. This Court determined that it "need look no further than the Montana Secretary of State's voter information pamphlet describing Initiative 118 . . . ." *Id*. In looking to the *actual* purpose of the law enacted in 1994 at the exclusion of everything else, however, this Court appears to have applied some sort of strict scrutiny, which has no place in analyzing the constitutionality of contribution limits. As discussed above, contribution limits receive a "relatively complaisant" review. *See Beaumont*, 539 U.S. at 161.

Moreover, this Court's analysis ignores that the Ninth Circuit just determined in 2015 that *Citizens United*, a 2010 case, had narrowed the permissible state interest. *See Lair II*, 798 F.3d at 740. Thus, the question on remand was not whether the initiative's drafters created a sufficient record of quid pro quo. Rather, the question on remand was whether the limits serve a constitutionally sufficient important interest *as that interest is now understood*. The Ninth Circuit's instructions were clear: "To allow Montana's political contribution limits to be tested *under the new and more restrictive standard* of *Citizens United,* and the correct 'closely drawn' test, we reverse and remand for proceedings consistent with this opinion." *Lair II*, 798 F.3d at 740. By focusing solely on the legislative history from 1994, this Court failed to engage in the proper analysis.

Further, Montana's limits are narrowly focused. In upholding contribution limits, *Buckley* stated that the limits "focus[] precisely on the problem of large campaign contributions--the narrow aspect of political association where the actuality and potential for corruption have been identified . . . ." *Buckley*, 424 U.S. at 28. *McCutcheon* recognized the base limits were constitutional because "they targeted 'the danger of actual quid pro quo arrangements' and 'the impact of the appearance of corruption stemming from public awareness' of such a system of unchecked direct contributions." *McCutcheon*, 134 S. Ct. at 1451 (quoting

*Buckley*, 424 U.S. at 27). *McCutcheon* observed that "the risk of quid pro quo corruption is generally applicable only to 'the narrow category of money gifts that are directed, in some manner, to a candidate or officeholder.'" *McCutcheon*, 134 S. Ct. at 1452 (citation omitted). The Court is deferential regarding dollar amounts and, if a limit is justified, the Court will not invalidate it for lack of "fine tuning[.]" *See Buckley*, 424 U.S. at 30.

Montana's contribution limits are narrowly focused because they limit only large, direct contributions to candidates. Under Montana's limits, a party can give $47,700 to gubernatorial candidates in an election cycle; $17,200 to other statewide office candidates; $6,900 to public service commission candidates; $2,800 to senate candidates; and $1,700 to House candidates. Mont. Admin. R. 44.11.227. These are limits on large, direct contributions. Thus, Montana's limits focus "precisely on the problem of large campaign contributions--the narrow aspect of political association where the actuality and potential for corruption have been identified . . . ." *Buckley*, 424 U.S. at 28; *see also Yamada v. Snipes*, 786 F.3d 1182, 1206 (9th Cir. 2015). (contribution *ban* was closely drawn "because it targets direct contributions" to candidates, "the contributions most closely linked to actual and perceived quid pro quo corruption."). Montana has a substantial case for relief on the merits.

### b. Montana's limits on parties do not prevent a candidate from amassing sufficient resources.

In determining that Montana's limits prevented candidates from amassing the resources necessary to engage in effective advocacy, this Court relied heavily on Clark Bensen's testimony from the *Lair* trial. *See* Doc. 278 at 23-24. As pointed out throughout this action, however, Bensen did the wrong analysis and considered only a smattering of cases. Moreover, he failed to consider the impact of below-threshold donors, and he acknowledged that the numbers he provided regarding maxed-out donors would drop "precipitously" if he had considered below-threshold donors. *Lair*, Tr. vol. 1, 148.[2]

Regardless of the problems with Bensen's testimony, this Court did not separately analyze whether the limits on political parties would prevent a candidate from amassing sufficient resources. And the record establishes that they do not. Mike Miller was the Plaintiff's only witness who provided any substantive testimony about the impact of contribution limits on an actual campaign. But Miller testified that he never received the maximum contribution from a political

---

[2] According to news accounts, Bensen recently admitted erring in overestimating how much campaigns might lose due to contribution limits as an expert in a case challenging Alaska's contribution limits. *See* Alex DeMarban, *"Error" by expert witness marks second day of campaign contributions trial*, Alaska Dispatch News (April 26, 2016), available online at: http://www.adn.com/politics/article/error-witness-marks-second-day-campaign-contributions-trial/2016/04/27/.

party and that he never asked a political party for assistance from paid staffers. *Lair*, Tr. vol. 2, 30, 42-43. Further, even if political parties max out on contributions, they can nonetheless provide further support by providing candidates with assistance from paid staffers. These wages are not subject to contribution limits. Mont. Admin. R. 44.11.401(2). In short, the limits on political parties do not prevent a candidate from amassing sufficient resources, and Montana has a substantial case for relief on the merits.

### B. <u>Without a Stay, Montana Will Suffer Irreparable Injury</u>.

Under the second stay factor, the stay applicant must show that denying the stay would create a "probability" of irreparable harm. *Lair I*, 697 F.3d at 1214. In granting a stay of this Court's order in *Lair I*, the Ninth Circuit determined that Montana had satisfied this factor "because of the likely disruption to the election and the untold, irreversible consequences that might result" from denying the stay request. *Lair I*, 697 F.3d at 1215. The Court noted that Montana's contribution limits had been in place since 1994, which created a settled background for campaigns; that absentee voting had already begun; and that the general election was looming. *Id.* at 1214. The Court reasoned that "[a]llowing the permanent injunction to remain in place before a merits panel of this court can ultimately rule on the constitutionality of the Montana contribution limit statute could throw a previously stable system into chaos." *Id.*

The same harms that *Lair I* identified are present here. Since 1994, political parties have been subject to contribution limits, and they have developed campaign strategies and expectations against this stable backdrop. Military and absentee voting has begun has already begun, and the primary election is less than 20 days away. Moreover, given the "wild west" approach to campaign contributions that sprang up in the week following this Court's 2012 ruling, there can be no doubt that unlimited donations from political parties would create mass chaos in Montana's elections. As this Court is aware, within two days of this Court striking down Montana's contribution limits in 2012, the Rick Hill campaign accepted a $500,000 contribution from the Montana Republican Party. *See* Doc. 213-1 at 4. It is only now--four years later--that the uncertainty stemming from that donation appears to have resolved.

The integrity and fairness of Montana's elections are at stake. Granting Montana's request for a stay would avoid disrupting the current election and would avoid the irreversible consequences that could arise from unlimited political party donations.

### C. A Stay Would Not Substantially Injure Other Interested Parties.

The final two factors require the Court to balance the public interest and the harm to the opposing party. *Lair I*, 697 F.3d at 1215. In determining that a stay

would not likely harm other interested parties, the *Lair I* Court noted that, since *Buckley*, the United States Supreme Court had viewed contribution limits as only a marginal restriction on associational freedoms and that Montana's limits were aimed at financial contributions. *Id.* The Court pointed out that Montana's limits left in place numerous options for interested parties to engage in political speech, such as volunteering, paying for volunteers, and engaging in independent spending to support a candidate. *Id*.

*Lair I*'s observations are apt in this case as well. Notably, this Court recognized in its summary judgment ruling that Montana's "contribution limits leave the contributor free to affiliate with a candidate in other ways, including through volunteering, knocking on doors, writing letters, maintaining a blog, putting up signs and bumper stickers, holding fundraisers, and placing ads in newspapers." Doc. 278 at 20-21 (internal quotation marks and citation omitted).

Further, Montana is only asking this Court to stay the portion of its order addressing the contribution limits for political parties. A stay would have zero impact on individuals and political committees. And, as this Court is aware, political parties have even more associational avenues than individuals. For example, political parties can associate with candidates by hosting training seminars, developing campaign messages, organizing volunteers, scheduling events, and identifying known donors to streamline fundraising efforts. Further, political

parties can provide paid personal staff, whose wages are not subject to contributions limits. *See* Mont. Admin. R. 44.11.401. As in *Lair I*, any harm that would be felt by political parties would be minimal and is vastly outweighed by the public interest. *Lair I*, 697 F.3d at 1215.

### D. Granting a Stay Would be in the Public's Interest.

The public's interest weighs heavily in favor of granting Montana's motion for a stay pending appeal. Montanans have more than an interest in fair elections--they have a right to fair elections. *See Lair I*, 697 F.3d at 1215. The public's interest is best served by keeping Montana's longstanding framework in place in the midst of the 2016 election. Suspending the limits will cause confusion and undermine the integrity of Montana's electoral process. Candidates, contributors, and the public need a clear and stable framework to participate in the political process. Individuals and political committees have this stable framework by virtue of the pre-I-118 limits. Political parties and candidates seeking donations from parties do not. A stay would provide a stable framework.

In *Lair I*, the Ninth Circuit recognized that Montana's contribution limits created a "background of fairness to allow candidates to plan their campaigns and implement their strategies upon the foundation of well-laid and understood ground-rules." *Lair I*, 697 F.3d at 1215. The Court determined that, in light of

the "deep public interest in honest and fair elections and the numerous available options for the interested parties to continue to vigorously participate in the election, the balance of interests falls *resoundingly* in favor of the public interest." *Id.* (emphasis added). The Court's observations remain true today. Granting Montana's motion for a stay and maintaining the status quo pending appeal would serve the public interest.

## CONCLUSION

For the foregoing reasons, this Court should grant Montana's motion for an immediate stay of the portion of this Court's order holding Mont. Code Ann. § 13-37-216(3) (2011) unconstitutional.

Respectfully submitted this 19th day of May, 2016.

        TIMOTHY C. FOX
        Montana Attorney General
        DALE SCHOWENGERDT
        Solicitor General
        MATTHEW T. COCHENOUR
        PATRICK M. RISKEN
        Assistant Attorneys General
        215 North Sanders
        P.O. Box 201401
        Helena, MT 59620-1401

By:   */s/ Matthew T. Cochenour*
       MATTHEW T. COCHENOUR
       Assistant Attorney General
       Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana by using cm/ecf system. Participants in the case who are registered cm/ecf users will be served by the appellate cm/ecf system.

Dated: May 19, 2016

/s/ Matthew T. Cochenour
MATTHEW T. COCHENOUR
Assistant Attorney General
Counsel for Defendants

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 3,500 words, excluding certificate of service and certificate of compliance.

/s/ Matthew *T. Cochenour*
MATTHEW T. COCHENOUR
Assistant Attorney General
Counsel for Defendants