Anita Y. Milanovich (Mt. No. 12176)
THE BOPP LAW FIRM, PC
1627 West Main Street, Suite 294
Bozeman, MT 59715
Phone: (406) 589-6856
Email: aymilanovich@bopplaw.com
*Local Counsel for Plaintiffs*

James Bopp, Jr. (Ind. No. 2838-84)*
Jeffrey Gallant (Va. No. 46876)**
Courtney E. Turner (Ind. No. 32178-29)***
THE BOPP LAW FIRM, PC
The National Building
1 South Sixth Street
Terre Haute, Ind. 47807
Phone: (812) 232-2434
Fax: (812) 235-3685
Email: jboppjr@aol.com
jgallant@bopplaw.com
cturner@bopplaw.com
*Counsel for Plaintiffs*

*Motion pro hac vice granted 9/9/11.
**Motion pro hac vice granted 6/11/12.
***Motion pro hac vice granted 2/1/16.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| **Lair,** et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> **Jonathan Motl**, et al., <br><br> *Defendants*. | Case No. 6:12-cv-00012-CCL <br><br> **Plaintiffs' Response In Opposition to Defendants' Motion for Partial Stay** |

## Introduction

On Tuesday, May 17, 2016, this Court permanently enjoined Montana's base contribution limits and aggregate political party contributions limits, leaving it to the Attorney General to resolve any issues regarding the possible reversion to prior limits. (D. 278 at 27.) Immediately thereafter, the Commissioner of Political Practices held a press conference, announcing that he intended to enforce the prior base contribution limits, adjusted for inflation but on a per election cycle (rather than per election) basis.[1] He indicated that he would not enforce the prior political party aggregate limits because they were lower than those this Court struck. *See* Peter Christian, *Montana Political Practices Commissioner Restores Former Contribution Limits After Court Decision* (May 17, 2016), *available at* http://newstalkkgvo.com/montana-political-practices-commissioner-restores-form

---

[1] Under Commissioner Motl's formulation, the individual contribution limits for contested candidates are raised somewhat in most races except House races, where the limit is $330, or $10 lower than the limits Plaintiffs challenged, which the Commission argued are "doubled," or $340, to make the seem less low. (*See* Doc. 241 at 6; Doc. 243 at 3; *see also* Br. Supporting Partial Stay, Doc. 284, at 11 (doubling political party aggregate limits to make them seem higher).) *See* Homepage, Commissioner of Political Practices, http://politicalpractices.mt.gov/default.mcpx (last visited May 23, 2016). The Commissioner apparently has no reservations enforcing that lower limit.

er-contribution-limits-after-court-decision/.

On Thursday late afternoon, May 19, 2016, Defendants ("the Commission") appealed this Court's decision and filed a motion for partial stay of it as it relates to the aggregate political party contribution limits. (D. 282, 283.) As best as Plaintiffs can tell, the Attorney General has simply assumed without deciding that Commissioner Motl's enforcement policy is law, and so on that basis, seeks to stay the limits.[2] (D. 284 at 2-3.) On Friday, May 20, 2016, this Court scheduled a hearing on the motion for Tuesday, May 24, 2016, at 10 a.m. (D. 286.) Plaintiffs[3] file this response brief in anticipation of that hearing.

## Argument

### I. Standard of Review.

Granting a stay pending appeal turns on:

(1) whether the stay applicant has made a strong showing that he is

---

[2]To Plaintiffs' knowledge, no formal statement or advisory opinion has issued from the Attorney General's Office about the legally correct approach regarding reversion of the contribution limits. Plaintiffs' counsel Ms. Milanovich has received and continues to receive countless calls from candidates and donors across the state seeking guidance because they are confused as to the state of the law and do not trust Commissioner Motl's interpretation to be principled or correct.

[3]Mr. John Milanovich has not been part of this lawsuit since 2013.

likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (*quoting Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The burden lies with the Commission to establish that these factors have been satisfied. *Holder,* 640 F.3d at 864. As shown below, the Commission fails to meet this burden.

**II. The Commission Has No Likelihood of Success On The Merits.**

To succeed on the merits, the Commission bears the burden of showing that the aggregate political party contribution limits are closely drawn to serve a cognizable interest in preventing either quid pro quo corruption or circumvention of laws targeting quid pro quo corruption. *McCutcheon,* 134 S. Ct. at 1441, 1450.

**A.  Political Party Contributions In Montana Do Not Implicate Quid Pro Quo Corruption.**

The aggregate political party contribution limits do not target quid pro quo corruption. The Commission has not offered to this Court a single example of quid pro quo corruption evidence—whether actual or apparent—between a political party and a candidate warranting political party contribution limits. The only example it offered that involved a political party in any way was a $100,000

contribution offer from a National Right to Work organization to a Republican party committee—a contribution that is not prohibited under *any* Montana law, and was rejected by the committee.

Perhaps this is because of there are no "special dangers of corruption associated with political parties . . . ." *Colorado Republican Federal Campaign Committee v. FEC*, 518 U.S. 604, 616 (1996) ("*Colorado-I*") (Breyer, J., joined by O'Connor & Souter, JJ.); *see id.* at 646 (Thomas, J., joined by Rehnquist, C.J., and Scalia, J., concurring in judgment and dissenting in part) ("As applied in the specific context of campaign funding by political parties, the anti-corruption rationale loses its force. . . . What could it mean for a party to 'corrupt' its candidate or to exercise 'coercive' influence over him? The very aim of a political party is to influence its candidate's stance on issues and, if the candidate takes office or is reelected, his votes. When political parties achieve that aim, that achievement does not, in my view, constitute 'a subversion of the political process.'") (citations omitted).

Also completely absent from the evidence is a factual reason for *aggregating* the political party limits. As in *McCutcheon,* once the aggregate limits are reached, "they ban all contributions of *any* amount." *Id.* at 1452. As a

matter of law it is difficult to understand how, for example, a state house representative could be bribable if she receives $851 from one political party (a dollar more than the present inflation-adjusted rate for that seat) and also be bribable if given a penny by a second political party. *See id.* at 1452. As was concluded in *McCutcheon,* the aggregate limits serve no corruption interest. *Id.* at 1452. No evidence the Commission offered suggests otherwise.

The Commission seems to suggest that a jury verdict finding campaign finance violations establishes corruption. (Br. Supporting Partial Stay, Doc. 284, at 7.) If the violation of campaign finance laws were evidence of quid pro quo corruption, Montana could justify a ban on contributions across the board, as numerous (often inadvertent and insubstantial) campaign finance violations occur every election cycle. Governor Bullock, who admitted to failing to comply with campaign finance law and settled three 2012 campaign finance violations for $100 with Commissioner Motl, would be just as "corrupt" as Mr. Wittich. *See Bullock Settlement*, http://politicalpractices.mt.gov/content/2recentdecisions/Tuiningav BullockSettlement (last visited May 23, 2016).

The Commission contends that the aggregate political party contribution limits serve an anti-circumvention interest. (Br. Supporting Partial Stay, Doc. 284,

at 6.) A circumvention interest requires that the law being circumvented be an otherwise constitutional law. *See generally McCutcheon,* 134 S.Ct. at 1452-60. This Court found that the base contribution limits are unconstitutional. (D. 278 at 27.) So Montana has no circumvention interest to justify the aggregate political party limits.

Moreover, the Commission's evidence presented at trial to this Court shows that circumvention concerns in Montana are "divorced from reality" because an average of 1 in 4 legislative candidates and 1 in 10 statewide candidates max out on political party contributions, with their receipts comprising under 5% of all contributions they receive. (Doc. 238, ¶ 64.) With so little of campaign dollars deriving from political parties, it is clear such circumvention does not occur.

Instead, as expert witness Edwin Bender's exhibits show, the political party's voice has been reduced to a whisper. Political parties never contributed greater than 4.2% of all candidate contributions between the years 2000-2010. (*Id.*) In 2008, gubernatorial races, political parties contributions were 2% of all contributions. (*Id.*) Yet in 2010, 22% of legislative candidates maxed out on political party contributions. (*Id.*) And in 2008, 18% of statewide candidates maxed out on political party contributions. (*Id.*) Anti-quid pro quo corruption and

anti-circumvention interests do not justify the political party contribution limits, much less aggregating them. The Commission is highly unlikely to win on the merits of this appeal.

**B.     The Aggregate Political Party Contribution Limits Are Not Closely Drawn.**

Assuming any cognizable interest justifies them, "the aggregate limits constitute an outright ban on further contributions . . . . At that point, the limits deny the [political party] all ability to exercise [its] expressive and associational rights by contributing to someone who will advocate for [the party's] policy preferences." *McCutcheon,* 134 S. Ct. at 1448. More reasonable alternatives exist.

If earmarked contributions funneled through political parties are the state's concern, then the state might consider banning earmarking contributions. *See id.* at 1459. Or Montana might impose base political party contribution limits for each candidate to avoid large contributions that signal behind-the-scenes efforts to bribe a candidate. Montana's failure to properly tailor its contribution limits by, for example, limiting contributions to political parties, (Br. Supporting Partial Stay, Doc. 284, at 6), cannot justify regulating another type of contribution—indeed, such a failure underscores lack of tailoring. Disclosures of political party

contributions remains required under MCA § 13-37-225—a less restrictive alternative to bans. *Id.* at 1460.

Additionally, ARM 44.11.401 excludes from political party aggregate limits a party's payment for campaign staff of candidates, an exception that came about because the Democratic Party did precisely that for Governor Bullock in 2012—spending that would otherwise have been illegal under the aggregate political party contribution limits and which had been unreported by the campaign. (Doc. 238, ¶ 37.) While political parties are prevented from giving money above the current limits, they are able to give thousands, even millions so long as that money is used to pay for staffing. The Commission's concern with a "loophole" created where no political party limits are in place is disingenuous: a loophole already exists in the aggregate political party contribution limit provision, where political parties can give unlimited amounts to campaigns.

The Commission argues that the aggregate political party contribution only target "large contributions." (Br. Supporting Partial Stay, Doc. 284, at 11.) But prohibiting large contributions does not justify contribution limits. As the Commission previously acknowledges, only "'large contributions' 'given to secure political quid pro quo's from current and potential office holders'" are permissible

under *Buckley*, *Citizens United*, and *McCutcheon.* (Defs. Resp. Br., Doc. 246, at 4.) Simply being "large" is not enough: "To the extent that large contributions are given *to secure a political quid pro quo from current and potential office holders*, the integrity of our system of representative democracy is undermined." *Buckley v. Valeo*, 424 U.S. 1, 26-27 (1976) (emphasis added). These limits are not closely drawn. The Commission is likely to lose on the merits of its appeal.

C. **Political Party Contributions Would Help Candidates Amass Needed Campaign Resources With Little Corruption Risk.**

This Court determined that candidate campaigns are underfunded. (Doc. 278 at 22-25.) Increasing political party contribution limits would easily assist candidates to raise what they need to successfully campaign since, as the Commission's expert Bender's exhibits show, political party contributions comprise less than 5% of candidate total receipts with 1 in 5 candidates maxing out on political party aggregate receipts. And because political parties cannot corrupt their own candidates, the corruption risk in minimal. *Colorado I*, 518 U.S. at 616, 646. The Commission is extremely unlikely to win on the merits.

## II. The Commission Will Not Suffer Substantial Harm If a Stay is Denied.

None of Defendants will be harmed if the political party contribution limits remain struck down. The Attorney General may actually benefit from it, as he himself is a 2016 incumbent candidate. And the injunction in no way prevents the Commissioner of Political Practices from ensuring disclosure of political party contributions. The Commission suffers no harm from the district court's injunction.

## III. Issuance of a Stay Will Substantially Harm Other Parties Interested in the Proceeding.

The same cannot be said of the Beaverhead County Republican Central Committee, and the Lake County Republican Central Committee (who have waited over 5 years for this issue to be resolved), nor of any other political party contributors in the state of Montana. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). *See also Sammartano v. First Judicial Dist. Court, in & for County of Carson City*, 303 F.3d 959, 973 (9th Cir. 2002). Staying the injunction to allow what can amount to a ban on political party contributions to be in force during a campaign cycle—a time where interest in

engaging in the political debate is at its peak and a time when their contributions may matter most—irreparably burdens and chills their First Amendment freedoms.

## IV. The Injunction Serves The Public's Interest.

The Commission argues for stability to avoid the "wild west" to justify staying this Court's decision, highlighting a parade of horribles since this Court's decision along with what occurred after this Court's decision in 2012 to underscore its argument. (Br. Supporting Partial Stay, Doc. 284, at 13-14.) The Commission is the source of its own problem. To date, Plaintiffs are only aware of the Commissioner of Political Practices offering any statements to the public about the current status of the law (the correctness of which many distrust). The Commission sought no motion to expedite its request for stay—it is only because of this Court that it is likely to be resolved somewhat promptly, leaving Montanans in continued confusion. And it was the Commissioner who filed a suit against Rick Hill in 2012 despite no known limits being in place at the time of Mr. Hill's contribution receipt. These are all actions (or inactions) of Defendants that create confusion and chill speech, not this Court's order. Defendants each have tools at their disposal for providing advice and guidance during the 2016 election

**Pls. Response Opp.
Partial Stay**                     -11-

cycle, tools Montanans are receptive to, particularly from the Attorney General, who is vested with the authority to address such issues.

Moreover, the public's interest lies in having the Constitution upheld: there is "significant public interest in upholding First Amendment principles." *Sammartano*, 303 F.3d at 974 (collecting cases from among the circuits to demonstrate the uniformity of this view). The limits should not be stayed on Montanans' account.

## Conclusion

The Commission has not satisfied any of the factors it must prove to justify staying this Court's injunction of Montana's aggregate political party contribution limits. This Court should deny the Commission's *Motion for Immediate Partial Stay*.

Dated: May 23, 2016                              Respectfully Submitted,

                                                 /s/ Anita Y. Milanovich
James Bopp, Jr. (Ind. No. 2838-84)*              Anita Y. Milanovich (Mt. No. 12176)
Jeffrey Gallant (Va. No. 46876)**                THE BOPP LAW FIRM, PC
Courtney E. Turner (Ind. No. 32178-29)***        1627 West Main Street, Suite 294
THE BOPP LAW FIRM, PC                            Bozeman, MT 59715
The National Building                            Phone: (406) 589-6856
1 South Sixth Street                             Email: aymilanovich@bopplaw.com
Terre Haute, Ind. 47807                          *Local Counsel for Plaintiffs*
Phone: (812) 232-2434
Fax: (812) 235-3685
Email: jboppjr@aol.com
jgallant@bopplaw.com
cturner@bopplaw.com
*Counsel for Plaintiffs*

*Motion pro hac vice granted 9/9/11.
**Motion pro hac vice granted 6/11/12.
***Motion pro hac vice granted 2/1/16.

## Certificate of Compliance

This memorandum of law complies with Local Rule 7.1(d)(2)(A). It contains 2324 words, as verified by the word count feature of WordPerfect X7, the word processor that created it.

/s/ Anita Y. Milanovich  
Anita Y. Milanovich

## Certificate of Service

I hereby certify that the foregoing document was served on May 23, 2016, upon the following counsel via the United States District Court for the District of Montana, Helena Division, electronic filing system:

TIMOTHY C. FOX
Montana Attorney General
DALE SCHOWENGERDT
State Solicitor
MATTHEW T. COCHENOUR
PATRICK RISKEN
Assistants Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
dales@mt.gov
mcochenour2@mt.gov
prisken@mt.gov
*Attorneys for Defendants*

                                          /s/ Anita Y. Milanovich
                                          Anita Y. Milanovich