IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DOUG LAIR, et al., | CV 12–12–H–CCL |
| Plaintiffs, | |
| vs. | ORDER |
| JEFF MANGAN[1], et al., | |
| Defendants. | |

Before the Court is Plaintiffs' motion for relief from the Court's Order and
Amended judgment under Fed. R. Civ. P. 60(b)(6).  The Court heard argument on
July 30, 2020.  James Bopp, Jr., of the BOPP LAW FIRM, PC argued for Plaintiffs
and was accompanied by local counsel, Anita Y. Milanovich of MILANOVICH
LAW, PLLC.  Matthew T. Cochenour, Acting Solicitor General for the State of
Montana argued for Defendants and was accompanied by Assistant Attorney
General Patrick M. Risken.  Having reviewed the parties' briefs and received
argument, the Court is prepared to rule.

---

[1] Jeff Mangan replaced Jonathan Motl as Montana Commissioner of Political Practices in
May of 2017.

**LEGAL STANDARD**

This Court can only reopen a final judgment under Rule 60(b)(6) when the request is supported by "extraordinary circumstances." *Riley v. Filson*, 933 F.3d 1068, 1071 (9th Cir. 2019). A "change in the controlling law can – but does not always – provide a sufficient basis for granting relief under Rule 60(b)(6)." *Henson v. Fidelity Nat'l Financial, Inc.*, 943 F.3d 434, 444 (9th Cir. 2019).

In their briefing, both parties addressed the factors set out by the Ninth Circuit for deciding a Rule 60(b)(6) motion in a habeas case. *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009). Ten years after deciding *Phelps*, the Ninth Circuit concluded "that many of the *Phelps* factors are relevant to the Rule 60(b)(6) analysis" in non-habeas cases. *Henson*, 943 F.3d at 440.

In *Henson*, the Ninth Circuit once again emphasized, as it did in *Phelps*, that "courts must consider all of the relevant circumstances surrounding the specific motion before the court in order to ensure that justice be done in light of all the facts." *Id.*, citing *Phelps* at 1133. Although the Court has considered those factors in deciding the pending motion, it heeds the Ninth Circuit advice that the factors set forth in *Phelps* are not "intended to be a rigid or exhaustive list" and has balanced the competing policies of the finality of judgments and the need to do justice in light of all the facts. *Id.* at 446, quoting *Phelps* at 1133, 1135.

**DISCUSSION**

Although Plaintiffs claim to be seeking relief from this Court's May 17, 2016, order (Doc. 278) and the Amended Judgment subsequently issued by the Clerk (Doc. 280), they are actually asking the Court to set aside the Ninth Circuit's reversal of this Court's May 17, 2016, order and decision to reverse and remand the case in 2015 in response to this Court's October 10, 2012, opinion and order, (Doc. 168) which relied on the Supreme Court's plurality opinion in *Randall.*

Plaintiffs argue that the Supreme Court's November 25, 2019 *per curiam* opinion in *Thompson v. Hebdon* constitutes a change in controlling law that provides a sufficient basis for granting relief under Rule 60(b)(6). In *Thompson,* the Supreme Court answered in the affirmative the question whether the plurality opinion in *Randall* should be considered in deciding cases involving campaign finance restrictions. *Thompson v. Hebdon* 140 S. Ct. 348, 351 and n. * (2019).

Defendants appear to concede that Plaintiffs' argument might have merit, but for the fact that the Ninth Circuit already applied *Randall* to Montana's limits in both its 2015 decision reversing and remanding the Court's 2012 opinion and order and its 2017 decision reversing the Court's 2016 opinion and order. Resolving this issue requires the Court to compare the events in this case to the events that led to the Supreme Court's decision in *Thompson.*

**Procedural History – *Lair v. Mangan*[2]**

Plaintiffs filed this lawsuit in the Billings Division for the District of Montana on September 6, 2011, alleging that a number of Montana state statutes were facially unconstitutional as they violated the First Amendment. Plaintiffs moved for a preliminary injunction on September 7, 2011, seeking to enjoin enforcement of these statutes. However, before any action was taken on the motion, Defendants moved to change venue and the case was transferred to the undersigned.

On February 16, 2012, the Court held a hearing on the motion for a preliminary injunction and enjoined enforcement of Montana's vote-reporting requirement and political-civil libel statute, Montana Code Annotated §§ 13–35–225(3)(a), 13–37–131. The Court denied the motion as to the remaining statutes.

The Court issued its first scheduling order on March 9, 2012. The parties agreed that all of the issues regarding the contribution limits in Montana Code Annotated § 13–37–216(1), (3), and (5) would be resolved through a bench trial and that all other matters would be adjudicated by summary judgment.

---

[2] The parties and the undersigned are familiar with the complex procedural history in this case as we all lived through it. The extensive background section is provided in part to assist the Ninth Circuit panel assigned to preside over the anticipated appeal of this decision.

The parties then cross-moved for summary judgment, and the Court held a hearing on May 12, 2012. The Court granted both motions in part and denied them in part. The Court permanently enjoined Montana's vote-reporting requirement, political-civil libel statute, and ban on corporate contributions to political committees used by those committees for independent expenditures. *See* Mont. Code Ann. §§ 13–35–225(3)(a), 13–37–131, 13–35–227. However, the Court concluded that Montana's ban on direct and indirect corporate contributions to candidates and political parties was constitutional. *Id.* at § 13–35–227. The parties cross-appealed that order but then voluntarily dismissed the appeals on July 23, 2012.

The Court held a bench trial from September 12, 2012, to September 14, 2012, in order to resolve Plaintiffs' claims related to Montana's campaign contribution limits in Montana Code Annotated § 13–37–216(1), (3), and (5). On October 3, 2012, less than three weeks after the close of evidence, the Court issued an order declaring the contribution limits unconstitutional and permanently enjoining their enforcement. (Doc. 157). The order indicated that complete findings of fact and conclusions of law would follow, but that the Court wished to make its ultimate ruling known as far in advance of the pending November election as possible. That same day, Defendants filed a motion to stay the Court's

ruling pending appeal to the Ninth Circuit Court of Appeals.  The Court did not

rule on the motion immediately, instead giving Plaintiffs five days to respond.

The Court ultimately denied Defendants' motion to stay.

On October 4, 2012, Defendants filed a notice of appeal of the Court's

October 3rd order and judgment.  On October 10, 2012, the Ninth Circuit motions

panel assigned to the case temporarily stayed the Court's order and judgment

pending appeal, citing the fact that the Court had yet to issue its findings of fact

and conclusions of law.  That same afternoon, this Court issued its findings and

conclusions, relying primarily on the United States Supreme Court's plurality

opinion in *Randall v. Sorrell*, 548 U.S. 230 (2006), to find that Montana's

campaign contribution limits do not pass constitutional muster.  (Doc. 168).

On October 16, 2012, the Ninth Circuit motions panel issued its full opinion

granting Defendants' motion to stay for the duration of the appeal.  In essence, the

motions panel concluded that Defendants were likely to succeed on appeal

because the Ninth Circuit's decision in *Montana Right to Life Association v.*

*Eddleman*, 343 F.3d 1085 (9th Cir. 2003) [hereinafter, *Eddleman*], likely remained

good law despite *Randall*.  *See Lair v. Bullock*, 697 F.3d 1200, 1202 (9th Cir.

2012) [hereinafter, *Lair I*].

/ / /

On May 26, 2015, the Ninth Circuit <u>merits</u> panel assigned to the case issued

its opinion, which was subsequently amended and re-issued on September 1, 2015.

*See Lair v. Bullock*, 798 F.3d 736 (9th Cir. 2015) [hereinafter, *Lair II*].  The *Lair II*

court reversed and remanded, directing this Court to apply the following test from

*Eddleman* to the case at bar: "state campaign contribution limits will be upheld if

(1) there is adequate evidence that the limitation furthers a sufficiently important

state interest, and (2) if the limits are 'closely drawn'—i.e., if they (a) focus

narrowly on the state's interest, (b) leave the contributor free to affiliate with a

candidate, and (c) allow the candidate to amass sufficient resources to wage an

effective campaign."  798 F.3d at 748.  The *Lair II* court expressly held that

*Randall* did not overrule the *Eddleman* closely-drawn analysis "because there

simply was no binding . . . decision on that point."  *Id.* at 747.  However, the *Lair*

*II* court also held that the Supreme Court's decision in *Citizens United v. Federal*

*Election Commission*, 558 U.S. 310 (2010), abrogated *Eddleman* to the extent the

latter relied upon an impermissible notion of what constitutes an "important state

interest" vis-á-vis contribution limits.  *Id.*

    The *Lair II* court provided explicit instructions to this Court as to the

standard to apply on remand.  First, having interpreted the Court's October 10,

2012 findings and conclusions as silent on the issue of whether Defendants

established an important state interest underlying the statutes at issue, the *Lair II* court directed the Court "either (1) to decide whether Montana has carried its burden in showing the contribution limits further a valid 'important state interest' or, if the [Court] again assumes the state has carried its burden, (2) to identify expressly what interest the [Court] assumes exists." *Id.* at 748. The Ninth Circuit also directed the Court to apply the three-part closely-drawn test from *Eddleman*, should it find that the contribution limits further a sufficiently important state interest. *Id.*

Once the Ninth Circuit's amended mandate was issued, (Doc. 200), the Court scheduled a status conference with the parties. Thereafter, the Court issued a scheduling order setting a discovery deadline of February 5, 2016, a motions deadline of March 4, 2016, a hearing on the motions for April 18, 2016, and a bench trial date — to the extent necessary — on May 23, 2016. The Court held a hearing on the parties' cross-motions for summary judgment on April 18, 2016, (Doc. 272) and issued its order granting Plaintiffs' motion for summary judgment, declaring subsections 1 and 3 of Mont. Code Ann. § 13-37-216 unconstitutional and permanently enjoining Defendants from enforcing those subsections on May 17, 2016. (Doc. 278). An Amended Clerk's Judgment (280) in favor of Plaintiffs was entered immediately following filing of the order.

Defendants appealed and the Ninth Circuit panel assigned to the case issued its opinion reversing the Court's judgment and holding that Montana's contribution limits survive constitutional scrutiny. *Lair v. Motl*, 873 F.3d 1170, 1187 (9th Cir. 2017) [hereinafter, *Lair III*]. The panel in *Lair III* cited the plurality opinion in *Randall* to justify its rigorous review of the undersigned's factual findings and reviewed *de novo* the application of the law to those facts, citing *Lair II*. *Lair III* at 1178. The panel then followed the *Eddleman* framework, as limited by *Citizens United* and *McCutcheon,* holding that Montana "offered adequate evidence that its limits further the important state interest of preventing quid pro quo corruption or its appearance." *Lair III* at 1180.

Although the *Lair III* panel used the *Eddleman* framework to decide that "Montana's limits are closely drawn to further the state's important interest," *id*. at 1186, the panel also considered the concerns raised by the plurality opinion in *Randall*. *Lair III* at 1185 - 86. The panel distinguished Montana's campaign contribution limits from those of Vermont, which were held to violate the First Amendment in *Randall,* noting that the Plaintiffs in this case failed to demonstrate that the "anti-challenger bias that animated the plurality in *Randall*" is present in Montana. *Id*. at 1186.

///

Page 9 of  14

Judge Bea wrote a dissenting opinion which addressed only the first prong

of the *Eddleman* framework. *Id.* at 1191 (Bea, J. dissenting), and voted to grant

rehearing en banc. Judge Bea and three other Ninth Circuit judges joined Judge

Ikuta's dissent from the decision to deny en banc review, noting that this Court

"got it exactly right" in holding that "Montana had not proven a sufficiently

important state interest in preventing actual or apparent quid pro quo corruption."

*Lair v. Motl*, 889 F.3d 571 (9th Cir. 2018) (Ikuta, J. dissenting), and the Supreme

Court denied certiorari. *Lair v. Mangan*, 139 S. Ct. 916 (2019).

No party at that time requested a revised judgment and the Ninth Circuit had

reversed the case without remanding so the Court did not issue a revised judgment

following the Supreme Court's denial of certiorari. The Court resolved the only

motion then pending before it by denying Plaintiffs' motion for attorney's fees and

costs. (Doc. 315).

**Procedural History – *Thompson v. Dauphinais*[3]**

On April 25, 2016, United States District Judge Burgess of the District of

Alaska conducted a bench trial in *Thompson v. Dauphinais*, a case in which three

individual plaintiffs and District 18 of the Alaska Republican Party challenged

---

[3] In addition to reviewing the three published decisions in *Thompson*, the Court obtained
the Ninth Circuit's Docket Report for Appeal No. 17-35019. References to docket entries from
that report will use Dkt.

"the constitutionality of four provisions of Alaska's campaign finance laws under the First and Fourteenth Amendments."  217 F. Supp.3d 1023, 1026 (D. Alaska 2016).   Judge Burgess relied on *Lair II* and refused to "apply the two-part, multi-factor 'closely drawn' test articulated by the Supreme Court in *Randall v. Sorrell* rather than the test laid out by the Ninth Circuit Court of Appeals in *Eddleman*." *Id.* at 1031, citing *Lair II*.  Based on that analysis and without considering the *Randall* test, Judge Burgess upheld the challenged provisions of Alaska's campaign finance laws.  *Id.* at 1039.

On November 27, 2018, the Ninth Circuit issued its opinion affirming Judge Burgess as to the constitutionality of three of the four challenged provisions of Alaska's campaign finance laws and reversing his decision as to "the nonresident aggregate contribution limit."  *Thompson v. Hebdon*, 909 F.3d 1027, 1044 (9th Cir. 2018).  The plaintiffs in *Thompson* relied heavily on *Randall* and the Ninth Circuit panel assigned to decide *Thompson* acknowledged that "Justice Breyer's plurality opinion in *Randall,* if binding, may aid Thompson's position because at least one of the 'warning signs' identified in *Randall* is present here."  The panel relied on both *Lair II* and *Lair III* to reject plaintiffs' argument, noting that the Ninth Circuit in those cases had determined that "*Randall* is not binding authority because no opinion commanded a majority of the Court."  *Id.* at 1037, n. 5.  One

judge's *sua sponte* request for *en banc* hearing was withdrawn after the parties filed supplemental briefing, (Dkt. 78) and the mandate issued on Feb. 20, 2019.

Nine months after the Ninth Circuit mandate issued, the Supreme Court granted the plaintiffs' petition for certiorari, vacated the Ninth Circuit's judgment and remanded the case for the Ninth Circuit "to revisit whether Alaska's contribution limits are consistent with our First Amendment precedents." *Thompson*, 140 S.Ct. at 351. It is clear from the following footnote that the Court intends the Ninth Circuit to consider *Randall* in its review. "The court below declined to consider Randall 'because no opinion commanded a majority of the Court,' instead relying on its own precedent predating *Randall* by three years. Courts of Appeals from ten Circuits, however, correctly looked to *Randall* in reviewing campaign finance restrictions." *Id.* at n. * (citations omitted). The Ninth Circuit has yet to issue an opinion in connection with the remand order.

**Comparison and Conclusion**

There is now no doubt that this Court was correct to apply the *Randall* factors when it first considered Montana's campaign contribution limits, thanks to the Supreme Court's recent decision in *Thompson*. Unlike the plaintiffs in *Thompson*, however, Plaintiffs in this case cannot argue that the Ninth Circuit completely failed to consider *Randall* when reviewing this Court's orders.

The panel in *Lair III,* perhaps recognizing that its refusal to address *Randall* could result in a successful petition for certiorari, covered its bases by stating "we would reach the same conclusions under the plurality's decision in *Randall.* " *Lair III* at 1186.  The majority opinion in *Lair III* relied on the motions panel that decided *Lair I,* noting that the "motions panel in *Lair I* addressed each of these 'danger signs' and 'considerations' at length, concluding that *Randall* likely 'would not have mandated a different result in *Eddleman.*'" *Id.* at 1187.  The majority opinion goes on to provide its basis for agreement with the conclusion reached by the *Lair I* motions panel.  *Id.*

The only "change in controlling law" mandated by the Supreme Court's decision in *Thompson* requires district courts and courts of appeal to apply the *Randall* factors.  This Court and the Ninth Circuit both considered *Randall,* but reached vastly different conclusions.  While this Court may agree with Plaintiffs that its own analysis of the *Randall* factors is superior to that of the Ninth Circuit, it cannot ignore the fact that Plaintiffs had the opportunity to raise this issue in both their petition for rehearing *en banc* and their petition for a writ of certiorari. The Supreme Court's decision to remand *Thompson* so that the Ninth Circuit could consider *Randall* does not require reversal of a Ninth Circuit decision that did consider *Randall.* Accordingly,

Page 13 of  14

IT IS HEREBY ORDERED that Plaintiffs' 60(b)(6) motion for relief (Doc.

316) is DENIED.

Dated this _3rd_ day of August, 2020.

Charles C. Lovell
Senior United States District Judge